ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. ASTON. (No. 7394.)

(Court of Civil Appeals of Texas. Dallas. Oct. 16, 1915. Rehearing Denied Nov. 20, 1915.)

1. RAILROADS ⬤⟞390—INJURY TO PERSON ON TRACK—DISCOVERED PERIL.

Where a pedestrian stepped in front of a train approaching a depot without realizing its nearness to him, and in attempting to escape fell, and his left leg was cut off by the wheels of the engine, and where the engineer, though he

saw the pedestrian fall and applied the emergency brakes, acted on the assumption that he had not been struck and released the brakes, in consequence of which the train continued to move forward, and mangled the right leg so as to necessitate its amputation, the railroad company was liable, under the doctrine of discovered peril, for loss of the right leg.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1324, 1325; Dec. Dig. ☞390.]

2. RAILROADS ☞390—INJURY TO PERSON ON TRACK—DISCOVERED PERIL—KNOWLEDGE—EVIDENCE.

The evidence in an action for such injuries was sufficient to charge the engineer with negligence, where it showed that he saw plaintiff fall to the ground or lying on the ground in close proximity to the track and train, and knew before the right leg was run over that he was in peril, and failed to use the means at his command to stop the train and avoid the injury, though it did not show that he knew that plaintiff would certainly be injured unless the train was stopped.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1324, 1325; Dec. Dig. ☞390.]

3. NEGLIGENCE ☞83—DISCOVERED PERIL—KNOWLEDGE.

The doctrine of discovered peril has no application, in the absence of actual knowledge by the person inflicting the injury of the peril of the person injured in time to avoid the injury by use of the means at hand.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 115; Dec. Dig. ☞83.]

4. NEGLIGENCE ☞134—PROOF—CONJECTURE.

Negligence cannot be established by mere conjecture without evidence of actual negligence or of facts from which it can be inferred.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 267–270, 272, 273; Dec. Dig. ☞134.]

5. TRIAL ☞260—INJURY TO PERSON ON TRACK—REFUSAL OF INSTRUCTION COVERED.

Where, in a pedestrian's action for loss of both legs from being run over by a train at a depot, the court instructed that, if plaintiff attempted to cross the track directly in front of the train, and the engineer did not see him until the front of the engine had passed him, that if the engineer then applied the brakes, and that if, after plaintiff fell, it appeared to the engineer that he was in the clear, and not in further danger, and the engineer used the care of a person of ordinary prudence, he could not be held to have discovered that plaintiff was in imminent peril, it was not error to refuse an instruction that if plaintiff attempted to cross in front of the moving train, and the engineer did not see him until the pilot beam of the engine was about even with him, that if it then appeared that he was falling away from the engine, and not in danger, and that if the engineer thereupon released his brake, allowing the train to continue moving forward, and in so doing acted as a man of ordinary prudence, he could not be held to have discovered that plaintiff was in imminent peril; the instruction given being substantially the same as the one refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ☞260.]

6. TRIAL ☞263—REQUESTS FOR INSTRUCTIONS—GIVING ONE OF SEVERAL.

Where a party requests two special instructions on the same issue, and the court selects and gives one, the party cannot complain of the refusal of the other.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 662, 663; Dec. Dig. ☞263.]

7. APPEAL AND ERROR ☞1060—HARMLESS ERROR—ARGUMENT OF COUNSEL.

In an action for injuries from being run over by a train, argument of plaintiff's counsel to the effect that the reason why the engineer and fireman were not present as witnesses was because they could not explain why they did not stop the train when they knew that plaintiff had fallen in front of same, and that "the engineer saw plaintiff when he was down on the rail * * * in front of the engine," if improper, did not require a reversal, where it did not appear that defendant was injured thereby.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. ☞1060.]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by Tom Aston against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

E. B. Perkins, of Dallas, Walter Collins, of Hillsboro, and Scott & Ross, of Waco, for appellant. Shurtleff & Cummings, of Hillsboro, for appellee.

TALBOT, J. This suit was brought by the appellee to recover damages for personal injuries inflicted upon him through the negligence of appellant's servants in charge of and operating one of its trains. By an amended petition filed May 22, 1914, appellee alleged, in substance, that he was injured while crossing the appellant's railway track in the town of Hubbard City, on or about the 26th day of January, 1914, the injury consisting of the loss of both of his legs. He alleged in said petition facts which would constitute him a licensee on appellant's track at the time and place of the accident, and that the defendant's employés were guilty of negligence in approaching said place at an unusual rate of speed, and in failing to ring the bell on the engine as it approached said place where appellee was injured, the same being at its depot in said town of Hubbard City; that after he got upon the track he observed that the train was not running at the usual and customary rate of speed, but was running at a high and unusual rate of speed, and that on account of that fact he was in imminent peril of being struck by said train; that when he realized his position he became greatly frightened and excited, and in attempting to get off the track fell and attempted to fall off of said track; and that his body did fall over the rail, but his feet and legs were cut off at or near the knees. He further alleged that at the time he fell the engine ran over only one of his legs, and that said injured leg remained upon the track, and that the engine and tender and the trucks of one of the coaches passed over said leg; that in an effort to remove his body from the track, and in throwing his body and limb around, his other foot and leg, which up to that time had remained uninjured, was

thrown upon the track, and before the train stopped the wheels of one of the coaches passed over said limb and injured it so that it was necessary to have the same amputated. He further alleged that the engineer in charge of said train saw him fall in front of said engine by the side of the track, and therefore knew of his perilous position by said track, and continued to move the said engine and train after the perilous position of the said plaintiff was known to said engineer, when the said engineer could, by the use of the means at his command, have stopped the said engine and train with safety to himself and to said train and to those on board the same, and that, if said engine had been stopped after the engine and tender alone had passed over plaintiff, one of his limbs would have been saved, but that the said engineer, knowing the perilous position of plaintiff, continued to cause said engine and train to move, although he well knew that the plaintiff had fallen in front of said engine and was in a position of imminent peril, and would likely be injured, unless said train was stopped; that the failure to stop said train after discovering the perilous position of the appellee was the proximate cause of the loss of his right leg. Defendant answered, denying each and all of the allegations of negligence set forth in plaintiff's petition, and averred that on the occasion in question it operated its train in the usual and customary manner at the usual and customary rate of speed at the time and place in question, and arrived at the station in question on its schedule time; that the plaintiff, Tom Aston, with a full knowledge that the defendant's said train and locomotive was approaching said place, deliberately stepped upon its said railroad track upon which said train and locomotive was running, in front of said moving locomotive, at a distance not more than eight or ten feet in front thereof; that said Aston was guilty of contributory negligence in going upon said railroad track at said time and place; that he was so close to the moving locomotive at the time that he entered upon said railroad track that it was impossible for those in charge of its locomotive to have stopped the same before reaching a point where the said Aston entered upon said track; that it rang its bell, sounded its whistle, and had its electric headlight burning as it approached said station in the usual and customary manner; that said Aston both saw and heard said train, and knew that it was approaching said station at said time; and that he recklessly, and without due regard for his own safety, and with a full knowledge of the danger which he would encounter by going upon defendant's track in front of its engine, deliberately went upon said track. The defendant railroad company specifically denied that its engineer in charge of said train knew of plaintiff's perilous position at the time he

saw plaintiff at the side of the track, and it denied that plaintiff was in a position of peril at said time, or that it continued to operate and cause said locomotive and train to move with any knowledge of the plaintiff's being in a position of peril, and it denied that said engineer at any time after the locomotive passed the plaintiff lying upon the ground by the side of the track possessed any knowledge that he was in a position where he would likely be injured unless the train was stopped. Plaintiff, by supplemental petition, denied the affirmative facts alleged by the defendant railroad company. The record discloses that both of plaintiff's feet and legs were crushed, the left by being run over by the engine drawing defendant's train and the mail and baggage car, and the right by other coaches in the train in the rear of said engine, mail and baggage cars. The case was submitted to the jury impaneled to try the same upon special issues, and their findings were such as to preclude a recovery, except those upon the issues submitted in relation to discovered peril. They found, and the evidence warranted such findings, that the defendant's engine injured one of the plaintiff's legs, the left leg; that after the engine drawing defendant's train passed plaintiff the plaintiff was in a position of imminent peril, and that the defendant's engineer operating the engine was aware of plaintiff's position and imminent peril; that after said engineer discovered and became aware of the position and imminent peril of the plaintiff, he could have stopped the train by the use of the means at his command with safety to himself and to his train and to those on board of said train in time to have avoided injury to plaintiff's other foot—right foot; that the failure of the defendant's engineer to stop the train in time to avoid injury to plaintiff's right foot and leg was negligence and the proximate cause of the injury to said right foot and leg; that at the time plaintiff was lying upon the ground near defendant's railroad track, and was observed in that position by defendant's engineer as the engine passed plaintiff, said engineer realized that, if plaintiff remained in the position he was then in, he would probably be injured by the wheels of one of the rear cars if the train did not stop at that time and place; that plaintiff's right foot and leg were so injured by being run over by defendant's cars that it became necessary to amputate the same; and that plaintiff had sustained damages thereby in the sum of $10,-000. The jury further found, in response to question asked by the court, that the plaintiff was not guilty of negligence which contributed to his injury.

Appellant groups in its brief its sixteenth, eighteenth, twenty-eighth, twenty-ninth, and thirtieth assignments of error. These assignments assert respectively that the trial court erred in refusing a special charge request-

ed by defendant directing the jury to return a verdict in its favor, in overruling its objections to the court's charge in submitting the issue of discovered peril, in overruling a motion made by defendant to have judgment entered in its favor upon the findings of the jury, in overruling a motion made by appellant to set aside the findings of the jury upon the issues submitted in relation to discovered peril, and in granting the plaintiff's motion to have judgment entered in his favor upon the findings of the jury. Appellee objects to a consideration of the assignments and propositions thereunder, for the reason claimed, among others, that they present different questions of law, and are not followed by such statement as is required by the rules. The statement in support of the assignments does not strictly comply with the requirement of the rules, but we think the assignments themselves and the propositions propounded thereunder present the same question of law for our decision, and, especially in view of the fact that we have reached the conclusion that the judgment of the lower court should be affirmed, the assignments will be considered.

[1] It is claimed that the court erred in the several rulings complained of by the assignments because the evidence was insufficient to authorize the submission to the jury of the issue of discovered peril, and does not sustain the findings of the jury upon that issue. In this view of the evidence we do not concur.

The plaintiff testified:

"When I reached that gravel walk that night and saw the train down south of me, there was no alarm or signals of any kind given. It was a dark night, and I could not tell by looking at the headlight of the train or any part of it that I could see where the train was. * * * When I stepped into the track, I noticed the train was right on me. I could see the pilot right at me, it seemed to me. It scared me so bad I could not hardly tell you what happened. I fell off from between the tracks; fell out on the east side of the track. When I first fell, the train caught my left leg and cut it off or run over it. My leg was on the east rail. The engine and tender and the mail car and the baggage car passed over it, and the front end of the negro coach struck my right leg. The negro coach was behind those other cars. I could not explain how it got caught. I hardly know what I was doing at the time it got caught. I was lying with my head from the track, and when it struck my right leg it just changed ends with me and threw my head back toward the track. I cannot say how come me not to get off the track when my first leg was cut. I made an effort to get off. I was not able to get away. When this last coach I have testified about caught me, it caught the right leg. The right leg was last cut. It was run over and just mangled from my ankle, plumb up close to my knee. That knee was afterwards amputated."

E. Pecot, the appellant's fireman on the engine which ran over appellee, testified by deposition as follows:

"In coming into the station with my train headed toward Corsicana on the night of the accident, I would be on the left side of engine, on the side next to the station. I first noticed Tom Aston on the night before he was injured when he attempted to cross the track. He was about three feet from the left rail when I first saw him. When I first saw him standing up, I do not remember the distance he was from the engine. I saw him before he attempted to cross. He was on the left side of the track, and we were going north. The engine was just a short distance, probably 20 feet, from him when I saw him standing there. I saw him when he stepped upon the track. My engine was about 8 or 10 feet from him when I saw him step upon the track. The engine and train went to the street crossing just north of the depot before it stopped; that is the engine's stopping place. When I say he stepped upon the track, I meant he stepped immediately in front of the engine, between the two rails. I holloaed to the engineer to stop her at that time. The engineer applied his emergency brakes, but the train did not stop entirely. When I holloaed to the engineer to stop her, he immediately applied his emergency brakes, which of course, gradually brought the engine to a stop. Of course, the engine did not come to a standstill, but gradually got slower, and I asked him [the engineer] if he hit a man, and he said not."

This witness further testified, in effect, that after he called to the engineer to stop and the speed of the train was slackened, the engineer released the air brake, and the engine and train moved about the distance of two or three coach lengths, and stopped at the regular stopping place at the station; that there were five cars in the train; and that when the train stopped he immediately took his torch, and, in company with the engineer, who slightly preceded him, went back and found the plaintiff, who had attempted to cross the railroad track, lying on the ground on the opposite side of the track from the side he got upon it.

T. Stovall, the appellant's engineer, in charge of the engine which injured appellee, testified by deposition as follows:

"I could not say that I saw Tom Aston before he was injured. I first saw him when he fell out on the ground. The engine at that time was south of the Main street crossing. That is north of the depot down about the freight house between the two crossings. My engine was about 2½ or 3 coaches from the ticket office at the time that occurred. Tom Aston was in the neighborhood of 30 feet from me when I first saw him. Aston had fallen out when I first saw him. I do not know whether he had been struck at all by the engine when I first saw him. I recall the fireman saying something just before I reached there. I set my emergency brake immediately after that. That was all I could do."

He also testified:

"With reference to what rate of speed my train was moving that night after I passed the first crossing south of the depot, I will say I made application there for the station stop. I had braked applications for station stop; enough to make the regular station stop. I had my engine under full control. When I saw Mr. Aston, he was on the right-hand side of the track. His body was not on the ground, but it was going to the ground. He was not standing erect; he was down. Just about the time I saw him, Mr. Pecot said, 'Did you hit that man?' * * * I saw Mr. Aston, and that made me apply the brake. * * * My train very nearly stopped when I applied my air brake at that time. I moved about three cars' length, I suppose, from where Aston was on the ground. At the time I saw him on the ground I thought he had not been struck or run over. That was the

reason that I released my brakes. As soon as my engine stopped, I saw Mr. Aston. I immediately lit my torch and ran back to see if the man had been hurt."

R. L. Horn stated, in substance, that he lived at Hubbard City, and was working at the ice factory stationary engine when the accident in question occurred, and that he was at the depot that night; that as the appellant's train approached the station he noticed the engine coming to a stop; that it was slowing down too much to stop at the regular stopping place; that he then heard the engineer when he pushed the air in emergency, and heard him when he released the air; that he slowed down almost to a stop, and then released the air and worked steam up to the regular stopping place. He further said that, according to his estimate, the train was going from the time it crossed the street up to the point where it struck the plaintiff between six and seven miles an hour, and that it was going slow after the emergency brakes were put on; that he did not know it to be true as an engineer that the emergency applied to a train of that character running only six or seven miles an hour would stop the train instantly almost; that when the air is put in emergency it won't stop the train immediately. He stated, however, that the application of the emergency brakes would stop a train of five or six coaches on a level track running five, six, or seven miles an hour in about eight or nine feet; that the engineer in charge of the engine that struck the plaintiff could have stopped the train in a distance of nine feet after striking him if he had wanted to do so.

Thus it appears that, when the appellant's engine struck appellee, he fell to the ground, and that after so falling, or as he was in the act of falling, to the ground, the engineer operating the engine saw him; that at this particular instant the engineer could have stopped the train in a distance of nine feet by application of the emergency brakes, but that, instead of making use of such brakes, upon the assumption that the plaintiff had not been struck, he released the air and allowed the train to move two or three car lengths to the usual stopping place at the railway station. The engineer said himself that he had his engine under full control. He further said, as has been shown, that:

When he first saw the plaintiff, he was about 30 feet from him; "that he was on the right-hand side of the track; that his body was not on the ground, but it was going to the ground. He was not standing erect, he was down."

Again he said:

"At the time I saw him [plaintiff] on the ground I thought he had not been struck or run over. That was the reason that I released my brakes."

Had the engineer made use of the means at his command after plaintiff's left foot and leg had been crushed by the engine, it is clear that the train would have been stopped in such time as to have avoided the injury

to his right foot and leg, and, according to the findings of the jury upon questions not involved in the issue of discovered peril, a recovery precluded. But such means were not used, and as a result thereof plaintiff's right foot and leg, evidently in his efforts and struggle to free himself from the perilous position in which he was placed, got upon the iron rail of the railroad track and was crushed and injured to such an extent that amputation was necessary.

[2-4] The contention of appellant, as we understand, is to the effect that, although the engineer saw the appellee falling to the ground immediately at the railroad track about the front of the engine, yet there is nothing in the evidence to justify the conclusion that he realized that appellee would be injured if the train was not then stopped, and hence the doctrine of discovered peril does not apply. And the propositions, among others, are asserted:

That "the engineer must have realized that, if Aston remained in the position he was then in, he would be injured, unless the train was brought to an immediate stop," and "that the engineer in charge of defendant's locomotive, at the time and place in question, did in fact realize that Tom Aston was in peril as he lay by the side of defendant's railway track when the engineer was passing him, cannot be shown or established by mere conjecture, nor inference; and when such fact is shown only by conjecture or inference, no liability is shown, and the issue of discovered peril does not arise."

It is well settled that:

The doctrine of discovered peril "has no application in the absence of actual knowledge, on the part of the person inflicting the injury, of the peril of the party injured, in time to avoid the injury by the use of the means and agencies then at hand. If he had no such knowledge, the new duty was not imposed, though it be clear that by the exercise of reasonable care he might have acquired same." Railway v. Breadow, 90 Tex. 26, 36 S. W. 410.

It is also well-established law that, where there is no evidence of negligence or fact from which negligence can be inferred, it is not permissible to indulge in mere conjecture. But to state broadly, as in effect appellant does in his second proposition quoted above, that it cannot be established by inference that the appellant's engineer on the occasion in question realized that the plaintiff, Aston, was in peril as he lay by the side of appellant's railway track when the engineer was passing him is not, in our opinion, sound. Mere conjecture cannot be indulged, but, if there are facts in evidence from which negligence reasonably can be inferred, a finding of negligence will be authorized and supported by the evidence. It was not necessary to sustain a charge of negligence on the part of the appellant on the doctrine of discovered peril that its engineer actually knew or realized that injury would result to appellee if the train was not stopped. The duty to use the means at his command to stop the train with the view of avoiding injury to appellee instantly arose when the engineer discovered that he was in

a position of such danger as that he would probably be injured if the train was not then stopped. That the engineer did not make use of the means within his power consistent with the safety of the train and those aboard of it to then stop the train is conclusively shown by the testimony, and from the facts and circumstances in evidence it is clear that the jury was authorized to infer and find that the engineer, having seen appellee falling to the ground, or lying on the ground, in close proximity to the railroad track and moving train, knew or realized, before appellee's right foot and leg were run over and crushed, that he was in peril of being injured by the moving train, and guilty of culpable negligence in failing then to use the means at his command to stop the train and avoid such injury. The facts were sufficient to charge the engineer with knowledge or realization of the perilous position of the appellee, and it was not essential to appellee's right of recovery on the issue of discovered peril that the engineer knew that he would certainly be injured unless the train was stopped. Railway Co. v. Vallejo, 102 Tex. 70, 113 S. W. 4. In the case just cited the Supreme Court held that there was no duty on the part of the railway employés discovering a small child about the railway tracks of the appellant, but in no danger in its position from the moving train, to stop same and remove the child to a place of safety, but in discussing the question of the railway company's duty said:

"If there had been probability that by the continued movement of the train injury would be inflicted on the boy the duty to stop the train would have arisen, but no such result was indicated by the facts."

In the case at bar the engineer knew of the dangerous proximity of the appellee to its moving train, and the facts in evidence were sufficient to indicate to the engineer at the time he saw appellee falling to the ground that he would probably be injured by a continued movement of the train.

The next assignments of error present the same questions of law just discussed, and are disposed of by what we have already said.

[5] The twenty-third assignment of error complains of the court's refusal to give the following special charge:

"If you believe from the evidence in this cause that plaintiff attempted to cross defendant's track directly in front of its moving train, and that defendant's engineer did not see plaintiff until he was about even with the pilot beam or cylinder of the engine, and that at the time the plaintiff appeared to the engineer to be falling away from the engine, and that said engineer in charge of the engine thought that plaintiff fell away from the track and was not in danger of being run over by the train, and if you further believe that said engineer thereupon released his brake and allowed the train to move on to its usual stopping place, and after the engineer first saw the plaintiff he acted as a man of ordinary prudence and care would have acted under the same or similar circumstances, then the engineer cannot be held to have discovered the plaintiff in 'imminent peril.'"

There was no error in refusing to give this charge. At the request of the appellant the court charged the jury as follows:

"If you believe from the evidence in this case that the plaintiff attempted to cross defendant's track directly in front of its moving train, and that defendant's engineer did not see plaintiff until the front of the engine had passed him, and he was in a falling position, and that the engineer immediately upon seeing plaintiff applied his brakes, and if you further believe from the evidence that after plaintiff fell it appeared to the engineer that he was in the clear, and was not in danger of being struck or further injured by the train, and after seeing the plaintiff the engineer used such care as a person of ordinary prudence would have used under the same or similar circumstances, then you are instructed that the engineer could not be held to have discovered plaintiff in imminent peril."

[6] The special charge requested and given is equivalent to or practically the same as the one requested and refused, and appellant has suffered no injury by the refusal of the one made the basis of this assignment of error. Besides, it is a well-established rule of practice in this state that, if two special charges are requested covering the same issue, and the court selects one and gives it in charge, the appellant is in no position to complain of the refusal of the other. Railway v. Ford, 118 S. W. 1137.

[7] The two remaining assignments of error are grouped and complain of certain remarks of counsel for the appellee in his closing argument to the jury. These remarks were, in substance, that the reason why the engineer and fireman were not here as witnesses so the jury could look at them was because they could not explain why they did not stop the train when they knew plaintiff had fallen down on the track in front of the moving train, and that "the engineer saw plaintiff when he was down on the rail of defendant's track in front of the engine." We are not sure that, under the facts of this case, the remarks of counsel here complained of were not within the scope of legitimate argument, but, if they were not, we are not prepared to say that they resulted in such injury, if any, to appellant as to authorize a reversal of the case. The assignments are therefore overruled.

We think the evidence supports the findings of the jury upon which the judgment appealed from was based, and that no material or reversible error is appointed out by the assignments.

The judgment of the court below is therefore affirmed.

Affirmed.