## TEXAS & N. O. RY. CO. v. HART.
### (No. 9868.)

Court of Civil Appeals of Texas. Dallas.
April 9, 1927.

Rehearing Denied May 14, 1927.

I. Negligence ⊙⇒83—Person discovering danger in time to prevent injury is liable, though injured person is negligent.

Where the danger of inflicting an injury is discovered by the person inflicting it in time to prevent the injury, such person will be liable for injury proximately resulting from his negligence in not preventing the injury, though it would not have occurred but for the previous negligence of the person injured.

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

2. **Negligence** ⊜⟫83 — **Doctrine of discovered peril involves inquiry whether person inflicting injury actually discovered and realized danger in time.**

The doctrine of discovered peril excludes inquiry into whether there was negligent failure to discover the perilous position of the person injured, or whether the person injured was contributorily negligent, and narrows the inquiry to whether person inflicting the injury actually discovered the one injured and realized the danger in time to prevent injury.

3. **Railroads** ⊜⟫348(4) — **Evidence held to support finding of engineer's negligence in not warning automobile about to cross tracks.**

Evidence *held* to support finding that engineer on train of defendant railway was guilty of negligence in not using the means at hand to warn the automobile in which plaintiff and wife were riding, which he saw about to cross tracks.

4. **Railroads** ⊜⟫348(4) — **Evidence held to support finding of engineer's negligence in not checking speed after seeing automobile.**

Evidence *held* to support jury's finding that engineer failed to use means at hand to check speed of train and avert collision with automobile in which plaintiff and wife were riding, after the engineer had discovered that the automobile was about to cross the railway tracks.

5. **Trial** ⊜⟫232(2) — **Confusing' instruction, not setting out special issues to which it applied, held properly refused.**

In action against railroad for injuries from collision of train with automobile, requested instruction on doctrine of discovered peril, to effect that engineer might consider train's safety in making emergency stop, not setting out special issues to which it applied, *held* confusing and properly refused.

6. **Appeal and error** ⊜⟫1062(1) — **Error in omitting qualifying element in special questions held harmless, where all evidence on issues presented in questions took such element into consideration.**

Where special issues on the doctrine of discovered peril were submitted to the jury in an action against railway company for damages resulting from collision with automobile, error in omitting to charge that engineer might consider train's safety in making emergency stop *held* harmless, where all evidence on that issue gave consideration to this qualification.

7. **Death** ⊜⟫99(4) — **$20,000 damages held excessive by $5,000 for death of wife.**

$20,000 *held* excessive damages by $5,000 for death of wife who was intelligent, capable, trained in business matters, earned considerable sums of money, and when regularly employed earned $75 per month.

8. **Damages** ⊜⟫132(1) — **$15,000 held not excessive damages for permanent·injuries making probable invalid of previously strong and vigorous man.**

$15,000 *held* not excessive damages for permanent injuries to previously strong man, which would probably incapacitate him for labor in the near future and make an invalid of him.

Appeal from District Court, Henderson County.

Suit by A. C. Hart against the Texas & New Orleans Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed on condition of remittitur.

E. A. Landenan, of Athens, for appellant.

Edwards & Hughes, of Tyler, and Justice & Sigler, of Athens, for appellee.

JONES, C. J. Appellee, A. C. Hart, by suit in the district court of Henderson county, Tex., recovered judgment in .the sum of $35,-000 against appellant, the Texas & New Orleans Railway Company, from which judgment this appeal is duly prosecuted. The judgment represented damages awarded appellee for the death of his wife and for personal injuries to himself, resulting from a collision of one of appellant's passenger trains with an automobile, in which appellee, his wife, and others were riding., This collision occurred in Henderson county, at a crossing of the Hobby highway over appellant's railway track. The basis for the suit rests upon the following facts:

On November 26, 1925, appellee and his .wife, E. I. Henry and his wife, with three children, made a pleasure trip to Buckner's Orphans' Home, near the city of Dallas, in an automobile owned and driven by Henry, and were returning to their home in Athens on said public highway, when this collision occurred. The highway west of this crossing is on the north side of the railroad, skirts its right of way, and runs approximately parallel to it. The railway and highway run approximately east and west, and one approaching this crossing from the west turns approximately south to make this crossing, and turns east after reaching the south side of the right of way. Owing to the topography of the country in the vicinity of this crossing, an automobile approaching it from the west is not in view of a railway train, approaching the crossing from the east, for some distance west of the crossing, until about the time the automobile makes the turn to the south for the purpose of making the crossing. It is not until the automobile is within 35 or 40 feet of the railroad tracks at the crossing that it comes into view of such train, and the view at this point cannot be had by the train until it is 618 feet east of the crossing. About one-half mile west of the crossing is appellant's flag station known as Pauline. About three miles east of the crossing is appellant's station of Eustice. A whistling post for this crossing is located 1,320 feet east of it. On the occasion in question, the passenger train was about 18 minutes late and was approaching the crossing at about sundown. For several hundred feet east of the crossing

this train was running on an up grade, the crest of this grade being reached approximately 300 feet east of the crossing, and from there to the crossing the grade is practically level. This train was composed of its engine and four coaches, including a baggage and express car. The usual whistling made by west-bound trains in the vicinity of this crossing is for the station, the crossing signals, and, if the train is to stop, the stop signal of two blasts of the whistle. The engineer testified that on this occasion when he reached the said whistling post, he sounded four blasts of the whistle for the crossing, immediately followed this with the station whistle of one long blast, and immediately followed this with the stop signal. As this evidence is not inconsistent with the findings of the jury, we adopt it, both as to the number of signals given and the manner in which they were given, after the train had reached said whistling post, though these facts in some respects are in dispute.

The highway, as it makes the crossing from the north side of the railroad, is considerably upgrade, and the road here is rough, of uneven surface, and made narrow by a ditch on one side. Something like 300 feet west of the crossing, the highway crosses a small stream by means of a bridge and is then upgrade to the crossing. The approaching train was not seen by the driver of the automobile or any member of the party until the engine and the automobile were almost in collision. The automobile was seen by the engineer the instant it came in view of the train, and when it was distant from 30 to 40 feet from the railroad tracks at the crossing; the fireman, being on the opposite side of the engine cab from the automobile, was unable to see it until about the time of the collision. The engineer, the instant he saw the automobile, realized that it was going to attempt to make the crossing in front of the train. The evidence as to whether the bell on the engine was continuously rung from the time the whistling post was reached until the collision at the crossing is in dispute. Out of deference to the finding of the jury, we find that the bell was not so rung. The evidence as to other necessary issues of fact will be discussed herein later.

Appellee's petition is full and complete in reference to its allegations of the negligence of appellant, upon which he based his right of recovery. It may be epitomized as follows:

(a) Failure to ring the bell on the locomotive at a distance of 80 rods from the crossing and to keep same ringing.

(b) Failure to keep and maintain the crossing and its approaches within appellant's right of way in a reasonably safe condition for one approaching and using the crossing.

(c) Running of the train on the occasion in question at an unreasonable, rapid, and dangerous rate of speed, under the conditions that obtained at and in the vicinity of this crossing.

(d) Failure of the operatives of the train to exercise ordinary care to discover and avoid injury to travelers on the said highway who were about to use the crossing.

(e) The crossing was so extraordinarily hazardous and so peculiarly dangerous to the users of this highway as to place on appellant a duty to have a watchman at same to warn those using said crossing of approaching trains. This allegation is made in connection with an allegation as to the vast amount of traffic carried on over this highway.

(f) A failure to have installed and maintained an automatic bell device to ring a warning to those approaching said crossing if same was also approached by a train.

(g) Invoking the doctrine of discovered peril by an allegation of the failure of the engineer to use all the means at hand to check the speed or stop the train when he discovered the perilous position of the automobile and its occupants.

(h) Further invoking the doctrine of discovered peril by an allegation of failure of the train operatives to use the means at hand to warn the automobile and its occupants of their perilous position, when same was discovered by the engineer, so that they could have protected themselves from the impending danger.

(i) Failure to give sufficient warning of the train's approach to the crossing.

Each of the foregoing allegations of negligence is alleged to have been the proximate cause of the injuries suffered by appellee. The pleadings of appellant are full and complete and form a basis for all defensive matters on which error is assigned.

The case was submitted to the jury on special issues and consisted of a separate submission for each of the alleged grounds of recovery, and on each of them the jury returned a verdict in favor of appellee. The damages were fixed by the jury in the sum of $20,000 for the death of Mrs. Hart, and in the sum of $15,000 for the injuries appellee personally suffered. In conformity to the verdict of the jury, judgment was entered in favor of appellee in the sum of $35,000.

In its amended motion for a rehearing, appellant assigned 75 errors, and on these assignments of error has predicated its appeal. In a brief of nearly 500 pages (and no criticism is intended because of its length), there are presented 73 propositions of law for the consideration of this court. These propositions, in addition to covering every phase of the submission of this case to the jury, also assign error both on the admission of certain testimony and the refusal to admit certain testimony. The major portion of these assignments of error and propositions of law deal with different phases of the issues of

negligence and contributory negligence submitted to the jury, and manifestly have no application to the submission of the issues of discovered peril, and, if either of the two distinct issues of discovered peril submitted to the jury and found in favor of appellee must be sustained, then a discussion of all assignments of error relating exclusively to other issues can be pretermitted.

After a careful review of this record, we have concluded that no reversible error was committed by the trial court in the submission of the issues of discovered peril; and as this conclusion necessitates an affirmance of this judgment, none of the assignments of error on the other issues will be discussed. If appellant's most extreme contention, in reference to the issues of negligence and contributory negligence, were sustained and this court should hold with such contention that there is no evidence upon which a finding of the jury on any issue of appellant's negligence could be sustained, or that appellee, as a matter of law, is foreclosed as to a right of recovery on those issues, because of the doctrine of contributory negligence, it would not affect such affirmance of this judgment, for it is manifest that the rights of appellant as to its defenses against the issues of discovered peril were not prejudiced by such assumed erroneous rulings of the trial court. For which reason, the many assignments of error in reference to all other issues will not be considered.

The first of the issues of discovered peril was submitted by the trial court as follows:

"Question 17. Did the operatives of the engine, while approaching to pass over said crossing at the time in question, discover that the automobile and its occupants were going upon the crossing ahead of the train and would be struck thereby unless the collision were averted, in time for the engine operatives, by use of the means at hand, to have reduced the speed of the train so as to avoid the death of deceased and the plaintiff's injury? Answer: Yes.

"Question 18. Did the engine operatives, while approaching to pass over the crossing at the time in question, discover that the automobile and its occupants was going upon the track ahead of the train and would be struck thereby, unless the collision were averted, and, after discovering this danger, fail to use the means at hand to check the speed of the train? Answer: Yes.

"Question 19. Was such failure to use the means at hand to check the speed of the train, if any you find in answering the eighteenth question, negligence on the part of the defendant company's employees operating the engine and train? Answer: Yes.

"Question 20. Was such negligence, if any you find in answering the nineteenth question, a proximate cause of decedent's death and plaintiff's injury? Answer: Yes."

The second of these issues of discovered peril was submitted as follows:

"Question 21. Did the operatives of the engine, as it approached to pass over the crossing, discover that the automobile and its occupants were going upon the track in front of the train and would be struck thereby unless the collision were averted, in time for the engine operatives, by the use of the means at hand, to have warned the occupants of the automobile of their impending danger in time for them to escape it, and thus have avoided plaintiff's injuries and decedent's death? Answer: Yes.

"Question 22. Did the operatives of the engine, as it approached to pass over the crossing, after discovering (if you find they did) that the automobile and its occupants were going upon the track in front of the train and would be struck thereby unless the collision were averted, fail to use the means at hand to give timely warning of the impending danger to the occupants of the automobile? Answer: Yes.

"Question 23. Was such failure of the engine operatives to give timely warning of the impending collision to the occupants of the automobile, if any such failure you find in answering the twenty-second question, negligence on the part of the defendant company's servants operating the engine? Answer: Yes.

"Question 24. Was such negligence, if any you find in answering the twenty-third question, a proximate cause of decedent's death and plaintiff's injury? Answer: Yes."

The only objection urged by appellant to the submission to the jury of the foregoing issues was to the submission of questions 17 and 18, and this objection is that:

"Wherein it is asked whether or not the engine operatives failed to use the means at hand, for the reason that the questions should be asked as to whether or not the operatives failed to use the *effective* means at hand?"

Appellant did not object to the submission of these issues on the ground not authorized by the evidence, but, on the contrary, by the objection above quoted, made the implied admission that such issues were in response to evidence. Appellant, however, did request a peremptory instruction for a verdict in its favor, and assigned error on the court's refusal to do so. It requested the submission of no special issue on discovered peril.

However, appellant did request the following special charge:

"No. 16. You are hereby instructed that, in considering certain questions in this charge with reference to an emergency stop of the train, the agents and servants of the defendant, as a matter of law, have the right to consider their own safety and the safety of passengers upon the train."

This requested charge was refused, and error was duly assigned because of such refusal.

Under these findings of the jury, appellee's injuries and his wife's death proximately resulted from the failure of the engineer to use the means at hand to check the speed of the train when he discovered the proximity of the automobile to the crossing and realized

its danger, and also proximately resulted from the failure of the engineer to use the means at hand, after he discovered the perilous position of the automobile, to warn its occupants of their danger. Such failure of the engineer in each instance was found by the jury to be negligence. If the finding of the jury in respect to either the failure to check the speed of the train, or the failure to warn the occupants of the automobile, is supported by substantial evidence, then such finding is binding on this court and this case must be affirmed, provided there was no reversible error in the manner of the submission of these issues to the jury.

[1] The rule in this state is well settled in reference to the doctrine of discovered peril. By such doctrine, as defined by our courts, is meant that, where the danger of inflicting an injury is discovered by the person inflicting it in time to have prevented the injury by the exercise of proper care, such person will be liable for injury proximately resulting from his negligence by reason of such failure, though the injury would not have occurred but for the previous negligence of the person injured. Furst-Edwards & Co. v. St. L. S. W. Ry. Co. (Tex. Civ. App.) 146 S. W. 1024; St. Louis Southwestern R. Co. of Texas v. Aston (Tex. Civ. App.) 179 S. W. 1128; T. & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S. W. 410; Railway Co. v. McMillen, 100 Tex. 562, 102 S. W. 103; Railway Co. v. Weisen, 65 Tex. 443.

[2] The doctrine of discovered peril excludes an inquiry into whether there was negligence in failing to discover a perilous position of the person injured in time to have avoided the injury, and also excludes an inquiry into whether or not the one suffering the injury was guilty of negligence in putting himself in such a place of peril. Such doctrine narrows the inquiry to when the person inflicting the injury actually discovered the person suffering the injury and realized his peril. The first relevant inquiry on this issue in the instant case is not whether any one in the automobile was guilty of negligence in the attempt to make the crossing in advance of the train, nor whether the engineer failed to keep a proper lookout for the users of the crossing, but, When did the engineer discover the automobile and realize that it would attempt to make the crossing ahead of the train? When this has been ascertained, the second relevant inquiry is, Could the engineer by use of the means at hand, with safety to the train, have prevented this collision? The jury found that he could. Is this finding supported by substantial evidence?

The evidence of the engineer is to the effect that he discovered the automobile at the earliest moment such discovery could be made, and that he at once realized that it was going to attempt to make the crossing in front of the train. The jury could, and doubtless did, accept this portion of the evidence of the engineer as a basis to determine whether this discovery was made in time to prevent the collision by the use instantly of the means at his command to check the speed of the train to such an extent that would have averted the collision, or instantly to sound a warning and thereby cause the driver of the automobile to stop before reaching the crossing, and thus avert the collision. Under any reasonable construction of the evidence, was this discovery made by the engineer in time for the collision to have been averted by the use of either of these means?

[3] Under the undisputed evidence, after such discovery was made, there was no attempt made to warn the occupants of the automobile. There is evidence from which the jury could have found that, at the time the engineer discovered the automobile and realized its danger, it was approximately 30 feet from the crossing, approaching the crossing at up grade and on a rough road, and could have stopped within a few feet from the time a warning was sounded. We therefore hold, that the finding of the jury to the effect that the engineer was guilty of negligence in not using the means at hand to warn the automobile is supported by evidence, and we adopt such finding as the finding of this court.

[4] On the question of checking the speed of the train, the evidence of the engineer is that, at the time he discovered the automobile and realized its danger, the engine was about 125 feet from the crossing; that the train was moving at a speed of about 38 miles per hour, or 55 feet per second, and that he instantly set the emergency brake, by means of which all the braking power of the train was almost immediately exerted; that this was all that he did and all that he could do to avert the collision; and that there was no means at his command that could have prevented the collision. The jury must have rejected this portion of the evidence of the engineer, both as to the distance the engine was from the crossing at the time he discovered the automobile and as to his immediate application of the entire braking power of the train. Was there evidence that warranted the jury in doing this? We have concluded that there was. The engineer also testified that the whistling post east of this crossing was distant 1,320 feet; that at this point he sounded the signal for the crossing, which consisted of two long and two short blasts; that he immediately sounded the station whistle of one long blast, and that he received an immediate response from the conductor that the train was to stop at Pauline, and immediately sounded a stop signal, which consisted of two blasts; that while he was in the act of giving the second blast of the stop signal the automobile came into his view; and that only a very

short time intervened from the beginning of the signals at the whistling post until he saw the automobile. Taking the engineer's estimate of a rate of speed of 55 feet per second, he would have consumed 24 seconds in reaching the crossing. The jury could have found from his description of the signals that not much in excess of half of this time was consumed in giving them. The farthest distance he could have been from the crossing when the automobile appeared in his view was 618 feet. Accepting his evidence, as the jury had the right to do, that the engineer saw the automobile at the earliest time he could have seen it and at the same time realized the danger to the automobile and its occupants, the evidence warranted the jury in believing that he was distant from the crossing several hundred feet, with approximately 600 as the maximum, at this time, and that the automobile was being operated at the minimum rate given by the testimony of 6 miles per hour, and was distant from the crossing about 40 feet.

Did the engineer immediately set the brakes in emergency? The effect of the finding of the jury is that he did not, for if he had the speed of the train could have been checked to such an extent as to have permitted the automobile to cross over and the collision avoided. The evidence of one or two eyewitnesses is that the braking power of the train was not applied until almost the instant of the collision. The evidence of appellant is that the train, through the means the engineer claims to have applied, could have been brought to a complete stop within about 600 feet. The evidence of a witness of appellee, expert in knowledge of stopping trains, is that the train could have been brought to a complete stop within less than the engineer's estimate of the distance he was from the crossing when he claims to have applied the braking power of the train. All of this evidence was given with due regard for the safety of the train. We are therefore of the opinion that the finding of the jury, that the engineer failed to make use of the means at hand to check the speed of the train and thereby avert the collision after he realized the peril of the automobile and its occupants, is supported by evidence.

[5, 6] It will be noted that, in the submission of the issue of discovered peril embraced in questions 17 and 18, the trial court did not in express terms require the jury to take into consideration the safety of the train by the engineer in reference to the use of the means at hand. The evidence on this issue did take such fact into consideration. Appellant did not except to the charge because of this omission. It did request special charge No. 16, as given above. As it is drawn, this charge is necessarily confusing and did not set out specifically the special issues to which it should be applicable. It merely defined its application to any charge in reference to an emergency stop of the train. In the form it was requested we do not think it should have been given, and in view of this fact, and of the further fact that all the evidence on this issue gave consideration to the omission, we do not think the error of the court in framing questions 17 and 18 was harmful to appellant and, in view of the record, reversible error.

[7] It is very earnestly contended, by proper assignments of error, that the judgment is excessive, both as to the amount allowed appellee as damages for the death of his wife and as to the amount allowed him because of the personal injuries received. At the time of the collision appellee was 56 years of age and his wife 2 years younger. While the evidence is such that warranted a large verdict in favor of appellee on account of the death of his wife, we are inclined to think that it is not sufficient to sustain the sum of $20,000, found by the jury and awarded by the judgment. This evidence discloses a most happy domestic life of the parties during their entire married life; that the wife performed with scrupulous care all of her domestic duties and at all times provided for the comfort, care, and happiness of appellee; that she was a woman endowed with an unusually bright mind and trained in business matters, and her advice to appellee on all matters relating to business was of great value to him; that in addition to this, and without the neglect of any domestic duties, she earned from year to year, by employment in offices and in business houses, considerable sums of money, the amount of which is not disclosed; that when she was regularly employed her salary was usually $75 per month, and when she worked for short periods of time she received from $3 to $5 per day; that all of this money was turned over to appellee to go into their common fund, and at the time of her death she was under employment to begin work at the first of the following month. We have given due consideration to all matters the jury was authorized to consider and place thereon a pecuniary value, with the result that we are of the opinion that $15,000 is the largest sustainable amount that should be awarded to appellee as damages for the death of his wife.

[8] We cannot agree to appellant's contention that the award made to appellee for his personal injuries is excessive. We find from the evidence that previous to the accident he was a strong and vigorous man, in the enjoyment of splendid health; that by reason of the accident he has received permanent injuries that probably will incapacitate him for labor in the near future; and that he may become in the future, as forecast by one of the medical witnesses, a "bedridden invalid." We therefore overrule the assignments of er-

ror in reference to the excessiveness of this item of the judgment.

We have carefully gone over all assignments of error, with the result that all of such assignments that relate to the issue of discovered peril, as submitted by ·the court, are overruled. We do not deem it necessary to pass upon the assignments of error relating to the other issues in this case. If appellee, within 10 days, will file a remittitur of $5,000, this judgment will be affirmed; otherwise, it will be reversed and remanded.

Affirmed on condition.