TOM BROWN DRILLING COMPANY et al.,
Appellants,

v.

Emil NIEMAN, Appellee.

No. 4165.

Court of Civil Appeals of Texas.

Eastland.

July 21, 1967.

Rehearing Denied Aug. 25, 1967.

Little & Little, James Little, Big Spring, for appellants.

Huffaker & Green, Harold Green, Tahoka, for appellee.

COLLINGS, Justice.

Emil Nieman, individually and as next friend of his grandson, Vernon Lee Brannan, a minor, brought this suit against Tom Brown Drilling Company, a corporation, and Gurld D. O'Neal seeking damages for the wrongful deaths of Elisa Nieman and Virgie L. Brannan. Elisa Nieman was the wife of Emil Nieman and Mrs. Brannan was the mother of the minor plaintiff, Vernon Lee Brannan. The case was tried before a jury and, based upon the verdict, judgment was rendered in favor of the plaintiffs. The defendants have appealed.

The deaths of the two women resulted from the collision of an automobile driven by Mrs. Brannan, in which Mrs. Nieman was a passenger, and a truck-trailer owned by Tom Brown Drilling Company and operated by its employee, Gurld D. O'Neal. The accident occurred on March 15, 1966, at about 8:15 p.m. The weather was clear at the time but it was dark. The vehicles involved were a 1964 Buick Wildcat and appellant's truck pulling a semi-trailer used for hauling oil field machinery. Just prior

to the accident, Mrs. Brannan was travelling north on Highway 87 about ten miles north of Lamesa in Dawson County. Highway 87 is a four lane divided highway running generally in a northerly and southerly direction. The place of collision was at the intersection of such Highway and F-M 1210, which is a farm-to-market road running generally east and west. There was a stop sign in place at the intersection regulating west bound traffic on F-M 1210, and east of the intersection was a sign reminding travelers that there was a stop sign ahead.

The jury found the truck driver, O'Neal, guilty of several acts of negligence and found that each of such negligent acts was a proximate cause of the collision. Specifically, the jury found that O'Neal failed to keep a proper lookout, was driving his truck-tractor at a greater rate of speed than a person of ordinary care and prudence would have operated it, that he failed to stop the truck-tractor before entering the intersection in question, that he failed to yield the right of way to the automobile being driven by Mrs. Brannan, that he failed to timely and properly apply the brakes on his motor vehicle and that he failed to change the course of the truck-tractor and trailer so as to avoid the collision. Each of such acts was as a matter of law, or found to be negligence and was found to be a proximate cause of the collision in question.

In connection with special issue number 4 which inquired concerning the failure of O'Neal to yield the right of way, the following instruction was given to the jury:

"In connection with the above Special Issue, you are instructed that the driver of a vehicle shall stop his vehicle in obedience to a stop sign that is erected at an entrance to an intersection, and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection, or approaching so closely as to constitute an immediate hazard."

The existence and sufficiency of the evidence to support the above findings are not questioned.

The jury also found that Mrs. Brannan failed to apply her brakes in time to avoid a collision but that such failure was not negligence, that she failed to keep a proper lookout, operated her automobile at a rate of speed in excess of 65 miles per hour and that such excessive speed on the occasion in question was negligence, but found that such failure to keep a proper lookout and excessive speed did not constitute proximate causes of the collision.

The court's charge contained the following instruction preliminary to any of the special issues:

"You are instructed that the driver of a vehicle shall stop in obedience to a stop sign at the entrance to a through highway, and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway, or which are approaching so closely on said through highway as to constitute an immediate hazard. You are instructed that by the term 'through highway' as used in this charge means every highway or portion thereof, at the entrances to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same, and when stop signs have been erected at such intersection."

In appellants' first point it is contended that the court erred in so charging and instructing the jury over appellants' objections. The objections made to such instruction were as follows:

"This instruction in the Charge amounts to a comment on the weight of the evidence, in view of the fact that the jury is instructed to the law with reference to stop signs in the Court's right-of-way issue, which is Special Issue No. 4, and unduly emphasizes the importance of the stop sign in connection with the accident made the subject of this suit."

Appellants do not contend that the instruction given is not a correct statement of the law, but assert that the giving of the instruction was wholly unnecessary to explain the issues submitted. Appellants point out that in connection with the right of way issue the jury was instructed that the driver of a vehicle shall stop in obedience to a stop sign and proceed cautiously, yielding to vehicles in the intersecting highway not so obligated to stop. Appellants contend that the preliminary general instruction complained of could only serve to unduly emphasize in the minds of the jury the importance of the stop sign, when defendants have in no way contested the fact that the stop sign was there and that O'Neal did not stop in compliance therewith.

We are of the opinion that there was no error in giving the instruction complained of and in any event no reversible error. The instruction did not bear upon the credibility or effect of the evidence and was not a comment on the weight of the evidence. Traders and General Insurance Company v. Davis, 209 S.W.2d 963 (Tex. Civ.App.1947 NRE). There was no instruction that appellants were guilty of negligence as was the case in Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481 (1943). There was no sharp conflict in the evidence concerning appellants' negligence proximately causing the accident and resulting injuries as there was in Levermann v. Cartail, 393 S.W.2d 931 (Tex.Civ. App.1965 NRE). Even if it should be held that it was error to give the instruction complained of, it was harmless error because O'Neal was found guilty of several other acts of negligence, each of which proximately caused the tragedy, and amply supports the judgment. Dallas Railway and Terminal Company v. Orr, 210 S.W.2d 863 (Tex.Civ.App.1948), affirmed 147 Tex. 383, 215 S.W.2d 863 (1948); Frasier v. Pierce, 398 S.W.2d 955 (Tex.Civ.App.1965 NRE).

Special issue number 11 inquired concerning the damages sustained by Mr. Nieman as a result of the death of his wife. In connection with such issue the court gave the following instruction:

"In answering the above Special Issue you are instructed that you will only take into consideration the value, if any, of the pecuniary loss, if any, to Emil Nieman by way of contributions, if any, services, counsel and advice, if any, as he may have in reasonable probability expected to receive from his deceased wife, Elisa Nieman, during his lifetime, had she lived. You must not take into consideration the grief, sorrow, mental pain, or anguish, if any, of Emil Nieman over the loss of his wife, nor the loss of her society, companionship or affection, if any, to him in arriving at your answer."

Appellants objected to special issue number 11 and the accompanying instruction because the jury was not advised that they should consider only the pecuniary loss to Mr. Nieman after deducting therefrom the costs and expenses he would have expended for his wife's maintenance and support had she continued to live. Appellants submitted to the court their requested instruction number 1 so advising the jury. The requested instruction and objections to the charge were refused and overruled and appellants urge that such action constitutes reversible error. These points are not well taken and are overruled. Lane v. Community Natural Gas Company, 134 Tex. 255, 134 S.W.2d 1058 (1940); Chesshir v. Nall, 218 S.W.2d 248 (Tex.Civ.App.1949 NRE).

In several points appellants complain of the court's refusal to include in the charge requested issues inquiring if Mrs. Brannan and Mrs. Nieman failed to fasten their seat belts, if such failure was negligence and was a proximate cause of their deaths.

There is no statute in Texas requiring an occupant of an automobile being operated on a public highway to use available seat belts. The duty, if any, in such cases must arise from common law responsibility.

There is no Texas authority on the question of such a common law duty. Cases involving the question in other states are in conflict. See Brown v. Kendrick, 192 So.2d 49 (Fla.App.); Lipscomb v. Diamiani, 226 A.2d 914 (Delaware Superior Ct. 1967) which hold it proper to refuse to allow a defendant to offer evidence of plaintiff's failure to use an available seat belt. See also Bentzler v. Braun, 34 Wis.2d 362, 149 N.W.2d 626; Sams v. Sams, 247 S.C. 467, 148 S.E.2d 154, and Kavanaugh v. Butorac, 221 N.E.2d 824 (Ind.App.), which indicate that the failure of a plaintiff to use an available seat belt may bar recovery where the injury would have been avoided by the fastening of such safety device. It is not necessary for us to decide which line of authority should be followed in Texas, because even in Bentzler v. Braun and other cases relied upon by appellants it is held that in order for a defendant to be entitled to the submission of such special issues the evidence must support such a submission, and it must be shown by probative evidence that there is a causal relationship between the injuries sustained and the failure to use seat belts. In the instant case there was no evidence by expert witnesses or otherwise that Mrs. Brannan or Mrs. Nieman would not have died as a result of the accident if they had been using their seat belts. The court properly refused to submit such issues and appellants' points urging that such refusal was error are overruled.

Based upon the verdict, judgment was rendered awarding Emil Nieman $18,000.00 for the loss sustained by reason of the death of his wife and $35,000.00 was awarded for the loss sustained by the minor, Vernon Lee Brannan, by reason of the death of his mother. Appellants urge that the court erred in refusing to grant their motion for a new trial because there was no evidence and insufficient evidence to sustain the jury findings on the damage issues and that such findings are against the overwhelming weight and preponderance of the evidence.

The record shows that Mrs. Nieman was 68 years of age at the time of her death and Emil Nieman was 72. They were married in 1916, had been husband and wife ever since, and neither had been married before. Mrs. Nieman's health was good except for arthritis, and she was a reasonably physically able person. The Niemans had a 200 acre farm which they used for the production of cotton and feed. They also usually kept approximately 1000 laying hens from which they sold eggs. The evidence indicated that Mrs. Nieman was able to do and did about everything that there was to do on the farm. She took care of a big yard, a garden, did the housework and laundry, helped take care of the chickens and the eggs and anything else that was needed to be done. She gathered the eggs twice each day and cleaned them up, graded, sorted and packaged them and assisted Mr. Nieman in feeding and watering the chickens. She did her own laundry every week as well as the housework and was an efficient housewife. She also counselled and advised with her husband concerning operation of their farm.

It is difficult to determine the amount in dollars and cents which will compensate a man for the death of his wife. In the instant case much of the service rendered by Mrs. Nieman was of a nature that the loss thereof can be estimated in dollars and cents, but her loss to the home is not limited to any such fixed standard. As stated in Gainesville H & W Ry. Company v. Lacy, 86 Tex. 244, 24 S.W. 269,

"The wife's labor, while equally valuable to the community, does not command a price in the market, and therefore cannot be proved by experts, as can that of the husband."

The determination of the question is ordinarily for the jury. In this connection it

is stated as follows in 33 Tex.Jur., page 144:

"Nor need the value of the wife's services be shown by specific proof with any mathematical accuracy, or in dollars and cents. 'Services', when applied to the function of a wife, are not measured by any fixed or conventional standard of value; their value may be ascertained by a jury from their common knowledge based upon the 'aid, assistance, comfort, and society the wife would be expected to render to or bestow upon her husband' in the circumstances in which they may be placed."

There was evidence and sufficient evidence in the record, as above briefly summarized, to sustain the finding of the jury concerning the loss sustained by Emil Nieman by reason of the death of his wife, and such finding is not against the great weight and preponderance of the evidence. The holdings and principles announced in the following cases in our opinion tend to support the award of damages to Mr. Nieman for the loss of his wife: Finck Cigar Company v. Campbell, 114 S.W.2d 348 (CCA 1938, affirmed 134 Tex. 250, 133 S.W.2d 759, 1939); Dallas Railway and Terminal Company v. Bishop, 203 S.W.2d 651 (CCA 1947 NRE); Texas & N. O. Ry. Company v. Hart, 294 S.W. 978 (Tex.Civ.App.1927 Writ Ref.).

The record shows that Vernon Lee Brannan was 14 years, 3½ months of age at the time his mother was killed on March 15, 1966. There was testimony to the effect that Vernon was a little slow to learn in school. In reading he was about on the level of the fifth grade but was on the level of the eighth grade in industrial arts. He is apt in working with his hands and has a talent in working with wood. His teacher who teaches children with minimal brain disfunction in a Lubbock public school testified that she considered Vernon a child of average intelligence range with a learning difficulty. Vernon's mother and father were divorced at the time Miss

Bateman, the teacher in question, received him as a pupil. The evidence indicates that Vernon's mother cared for him as an ordinary prudent mother would; that she was a good housekeeper and had established a home for Vernon after her divorce; that she was a dutiful mother; that the mother-son relationship was good; that she carefully watched after his well being, taught him the ordinary things a mother teaches a child and was patient and kind in her dealings with him. The evidence indicated that Vernon required extra attention with his studies and that his mother sat up late at night to help and teach him; that she gave him good moral training, teaching him what was right, to respect other people and how to get along with others; that she did everything a mother could do for her child in the way of attention, feeding, clothing and caring for him and furnishing and keeping a good home. There was evidence to the effect that because of his minimal brain disfunction Vernon needs more guidance than a normal child; that such a child needs more encouragement, watching over and moral guidance through their life in making decisions; that the needs of such a child continue for a long time and that Vernon will need guidance on how to spend his money and what he should do with it after he is out of school and working; that Vernon needs constant reminders to stay at his work and the type of discipline that goes with the necessity for such reminders.

The record shows that Mrs. Brannan was 35 years old at the time of her death on March 15, 1966. She and her husband were divorced on October 8, 1965, and her husband paid $60.00 per month for child support. The record further shows that both before and after the divorce Mrs. Brannan had been doing seasonal work at a cotton classing office; that such work was for an approximate four month period of the year and that during the time she was so employed she earned approximately $80.00 per week; that she had been engaged in such seasonal work for about a

month just prior to the time of her accidental death. The record also indicates that she had started a course of training to qualify herself to work as a ticket agent or substitute hostess for airlines in order to better her financial position.

In summary, the evidence in our opinion indicates that Vernon Lee Brannan is not normal in all respects and as a result thereof needs more than ordinary parental care, and that he has been deprived of the needed care, counsel, guidance, education and training that his mother would in all probability have rendered to him both during his minority and thereafter as long as his mother lived. It is also difficult to determine in dollars and cents the amount which would compensate a son for the loss of his mother. Appellants point out that life expectancy tables were not introduced. Such proof, however, is not necessary. Louisiana & A. Ry. Co. v. Chapin, 225 S.W.2d 614 (Tex.Civ.App.1949 writ ref.). In the Chapin case the court in discussing the rule in such cases stated as follows:

"The statute in such cases provides that for wrongful injuries resulting in death 'the jury may give such damages as they think proportionate to the injury resulting from such death.' Art. 4677, R.S. The difficulties of proof in such matters are well known to the legal profession. No rule is prescribed for making the calculations. Exact ascertainment is obviously not possible. Juries from their own knowledge, experience and sense of justice are called upon to fix the compensation with reference as far as possible to conditions existing at the time of death. They are not to be influenced by passion or prejudice. The jury's estimate is not defined, but any estimate of the court is likewise undefined. The judgment of the jury is as good as that of the court, and it should prevail unless it appears that the verdict is influenced by passion or prejudice and is not the result of honest convictions."

In 17 Texas Jur.2d 408, it is stated that:

"In an action to recover damages in which the law furnishes no precise legal measure for their recovery, and they are unliquidated, the amount to be awarded rests primarily within the discretion of the jury, and unless the award is so large as to indicate that it was the result of passion, prejudice, partiality, or corruption, or that the evidence had been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal.

The enlightened, conscientious, and fair judgment of a jury, in the light of the evidence, is constituted the sovereign test of a proper award of damages."

From an examination of the evidence we are unable to say that the award of $35,000.00 to Vernon Lee Brannan is so large as to indicate that it was the result of passion, prejudice, partiality or corruption, or that the evidence has been disregarded. In addition to the authorities above cited, the following cases in our opinion tend to support the award of damages to Vernon Lee Brannan because of the loss of his mother. Houston Gas & Fuel Company v. Perry, 55 S.W.2d 901 (Tex.Civ.App.1932, affirmed 127 Tex. 102, 91 S.W.2d 1052, 1936); Texas Consolidated Transportation Company v. Eubanks, 340 S.W.2d 830 (Tex.Civ.App. 1960 NRE), in which an award of $37,500.00 to a 13 year old daughter was found not to be excessive; Missouri Pacific Railroad Company v. Rose, 385 S.W.2d 492 (Tex.Civ. App.1964 NRE), in which an award of $130,000.00 to an 8 year old girl as damages for the death of both her parents was held not to be excessive; Continental Bus System, Inc. v. Toombs, 325 S.W.2d 153 (Tex. Civ.App.1959 NRE), in which a reduced award of $30,000.00 to a 12 year old boy was held proper.

In numerous points appellants complain of statements made by one of appellee's attorneys in closing argument to the jury, contending that such argument was improper and prejudicial and that the court

erred in not granting appellants a new trial. The arguments complained of were statements by appellee's attorney to the effect: (1) that he had felt in his pocket to see if he had a badge that he could give to Jack (Appellants' attorney) so he could "pin it on his truck drivers", that he would almost come to the conclusion that Jack felt and would want the jury to feel that a service had been done in taking the lives of two good women; (2) that defendants had failed to produce as witnesses the swamper who was in the truck, and the truck driver and a swamper of a truck which was right behind such truck and that plaintiffs had tried by subpoena to produce them; (3) that he could remember when a vacant lot could be bought in Lamesa and Tahoka for $500.00 on which this boy (Vernon Lee Brannan) could build a filling station but that now the same lot would cost $30,000.00; (4) that what would it be worth to Vernon when he is 25 and sitting on the side of a cot on somebody's jail, or somebody's battlefront or in his own home reflecting on mistakes that he may have made, to be able to call back and remember the time when his mother said: "Now, son, look, here is some advice, here is some counsel, remember it." (5) that he read in the newspaper that steel after it had been processed into a tractor, or into a blowout preventer or into a truck was worth in excess of $1.00 per pound, and that the thing that took her life (Mrs. Brannan's) was 65,000 pounds of fundamental steel worth on today's market in excess of $1.00 a pound and that the advice of the boy's mother, her counsel, her training, the contribution she would make was worth in excess of $1.00 for every pound that took her life; (6) that in 1966 a farm on which this boy (Vernon Lee Brannan) could make a living was worth $100,000.00, and just a lot on which he could build a filling station was worth $30,000.00; (7) and that appellee's attorney in such argument stated or inquired of the jury as follows: "—and what is it going to be worth to hire somebody to take care of this old gentlemen. I believe the

newspapers have talked about it in terms of eight and ten thousand dollars a year.—" Appellants further urge that the court erred in failing to grant them a new trial because of the cumulative effect of the argument complained of.

Appellants concede that they made no objections to any of the argument at the time of the trial and admit that a reversal of the judgment would not be proper unless the argument is so flagrant that an instruction from the court to the jury that it should not consider the same would not have rendered the argument harmless. In the court's qualification of appellants' bill of exception complaining of the argument it was stated that if objections had been made to some of the argument he would have sustained such objections and, if requested, would have instructed the jury not to consider it.

The general rule is that a judgment will not be reversed because of argument of counsel unless it appears that the argument was improper and was of such a nature as to satisfy the reviewing court that it was calculated to cause and probably did cause the rendition of an improper judgment. Aultman v. Dallas Ry. & Terminal Company, 152 Tex. 509, 260 S.W.2d 596 (1953).

None of the argument complained of was an appeal to racial prejudice as was the case in Texas Employers Insurance Association v. Haywood, 153 Tex. 242, 266 S.W.2d 856 (1954). In our opinion the argument was not of such a prejudicial and inflammatory nature that the error involved was beyond correction by proper instruction from the court. It is true as urged by appellants that much of the argument was not supported by evidence, but it was not of an "incurable" nature. In Wade v. Texas Employers Insurance Association, 150 Tex. 557, 244 S.W.2d 197 (1951), argument by the claimant's attorney in a workman's compensation case contained improper reference to what the de-

ceased employee's wife, son and friend attempted to testify concerning statements made by the deceased after the accident, and to the fact that the employer's insurance carrier had not offered testimony of any of the deceased employee's fellow workmen except the leader. It was held by our Supreme Court that the argument was not so prejudicial that its harmful effect, if any, could not be cured, and therefore the error, if any, was waived by the failure of opposing counsel to object at the time the argument was made. The court, in passing upon the question, stated as follows:

"* * * [i]n a general sense most all improper argument is the same, in that it appeals, whether by passion, the suggestion of 'imaginary testimony' or otherwise, to something other than the evidence in the case."

In Younger Bros. Inc. v. Myers, 159 Tex. 585, 324 S.W.2d 546 (1959), it was stated:

"During the heat of trial extravagant and ill-considered statements are often made. The prejudice resulting from such remarks can generally be removed by an admonition to the jury from the presiding judge and we are unwilling to accede to the proposition that juries pay little or no attention to the instructions of trial judges. We do not regard the improper argument made in this case as being beyond correction by means of a proper instruction."

The error, if any, in the instant case was of the type that it could have been cured by a proper instruction from the court, and was waived when appellants' counsel failed to object thereto. The argument was not of such nature that it was reasonably calculated to cause and probably did cause the jury to render a verdict other than that it would have returned except for the improper argument.

Appellants' points are all overruled.

The judgment is affirmed.