## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. LARKIN.

### No. 10720.

Court of Civil Appeals of Texas. Dallas.
Nov. 29, 1930.

Rehearing Denied Jan. 17, 1931.

Adair Dyer, of Dallas, Carter, Jones & Turney, of St. Louis, Mo., E. A. Landman, of

Athens, and Richard & A. P. Mays, of Corsicana, for appellant.

Bishop & Holland, of Athens, for appellee.

JONES, C. J.

Appellee, surviving wife of McDuff Larkin, deceased, instituted suit in the district court of Henderson county, Tex., against St. Louis Southwestern Railway Company of Texas, appellant, to recover damages occasioned by the death of her husband in a collision between one of appellant's trains and the automobile in which deceased was riding, at a highway crossing of appellant's railway. The trial resulted in a judgment in favor of appellee in the sum of $15,000, and appellant has duly perfected an appeal to this court. The following is deemed a sufficient statement of the facts:

Appellant owns a railway line extending from the east through Athens and west to the city of Corsicana. Highway No. 31 extends approximately west from the city of Athens, and crosses this railway about 2 miles west of Athens. On January 29, 1929, deceased was riding in an open touring car on the highway, with one Dock Boyett, owner of the car, going west from Athens, on a duck-hunting expedition. Dock Boyett was driving the car, and the parties left Athens a little after 1 o'clock p. m. of said day; both occupants were in the front seat. The wind was blowing a gale from the north on this occasion, and in the vicinity of the crossing there is heavy timber, consisting of large trees, saplings, and bushes of small growth. Approximately 150 yards from the crossing, the highway enters a deep cut, and from there on it is down grade to the crossing. The embankment on the east side of the highway, at its highest point, is described by witnesses as being 10 to 15 feet high, covered with a growth of thick bushes. Before the railway right of way is reached, there begins a gradual lowering of the height of this embankment, which extends to and upon the railway right of way to a distance of approximately 25 feet from the railway track. At this distance the embankment is approximately 3 feet high, but there is a growth of brush about 3 feet high in places upon the embankment here. The railway track from the east is also down grade to and beyond this crossing. Because of the timber and the cut through which the roadway extends, the view of a train coming from Athens is entirely obscured from one traveling the highway until after he has entered the railroad right of way; likewise the view of an automobile is hidden from the engineer of such train until the automobile is about 40 feet from the crossing and the engine approximately 100 feet east of the crossing, and then the only part of an automobile visible is the top. However, at a point in the highway 25 feet from the crossing, one traveling towards the crossing in an automobile can see a train after it has approached to a point approximately 100 feet distant from the crossing. On the occasion in question, there was in existence, on this part of appellant's road, what is termed a "slow order," directing that west-bound trains out of Athens should slow down while approaching and rounding curves in the vicinity west of Athens, for the safety of employees who were supposed to be working on the railway track. A short distance east of this crossing there is a curve which was covered by the "slow order," and such order was observed by the engineer on this occasion; however, after rounding the curve, the brakes were released, and the train was allowed to gather momentum while coasting down grade to and over the crossing. After rounding this curve, the engine was not allowed to work steam, and was coasting as noiselessly as a train of its character could run under such conditions. There is a switch east of this crossing and also whistling posts both for the switch and for the crossing. The usual signal given by trains approaching a siding or switch was given by the engineer, and also the usual crossing signal was given just a little later, approximately 80 rods east of the crossing. This latter signal consisted of two long and two short blasts from the engine. The engine was equipped with an automatic device for ringing the bell, and this device was set to ring the bell at Athens, and continued to ring the bell until after the train was stopped west of the crossing. The engineer testified that, when his train was approximately 100 feet east of the crossing, he saw the top of the automobile as it approached the crossing when it was at a distance from the crossing of approximately 40 feet; that the automobile was apparently traveling at a rate of 8 or 10 miles per hour, and his train at a rate of 18 or 20 miles per hour; that he then believed the automobile would stop before it reached the crossing, but as a matter of precaution he at once sounded the whistle; that, when his train had approached to within about 60 feet of the crossing, he discovered, for the first time, that the automobile did not intend to stop, and he at once used all of the means he had at hand, viz. applying the air to the brakes in emergency and opening the valve to release the sand, in order to bring the train to a quick stop, but that the collision occurred, both men were killed, and the automobile wrecked. When the train stopped, the front of the engine was approximately 300 feet from the crossing; that is, the train had been carried by its momentum about 360 feet from the time the air in emergency was applied to the brakes before a stop could be made. Both men were thrown under the train and instantly killed, and the automobile was thrown on the opposite side of the track and virtually destroyed. The speed limit of freight trains on this road was 20 per hour. The train consisted of eighteen or twenty

empty refrigerator cars received at East St. Louis for transportation to Corsicana; they were fruit-packing cars, and their ultimate destination was California. At Corsicana said cars were to be delivered to the Southern Pacific Railway Company.

Deceased Larkin was 68 years of age, strong and healthy for a man of his years. At the time of his death, he owned a small farm about 2 miles West of Athens, where he had lived for years. His farm was on another road, but he was thoroughly familiar with the crossing in question, as was deceased Boyett. For a long time, deceased Larkin was a rural mail carrier, but at the time of his death had been retired on a pension of $52.10 per month. He looked after his farm, renting most of it, and his income from same was approximately $1,300 per year, in addition to the pension he received. Appellee was nine years his junior. Deceased left five adult children, who released their entire rights in any cause of action to appellee, and at the time of the trial she was entitled to whatever award was made on account of the death of deceased.

On motion of appellant, a rule for costs was entered against appellee, and such rule was attempted to be complied with by the filing by appellee of an affidavit of inability to pay the costs, or any part thereof, or to give security therefor. Appellant contested appellee's right thus to comply with the rule, and, after a hearing, this contest was overruled, and appellee was allowed to prosecute this suit on the affidavit in lieu of a cost bond. Exception was duly reserved by appellant to such ruling, and it is assigned as error.

In the first amended original petition, appellee alleged three grounds of negligence, viz.: (a) In permitting an embankment on its right of way which obstructed the view of those operating its trains and those on the highway approaching the crossing; (b) in failing to keep some person, or to maintain at or near the crossing some device other than a signboard, for the purpose of warning persons approaching the crossing of the approach of trains; (c) in permitting and causing its train to approach the crossing at the time deceased was killed at a dangerous rate of speed. This amended petition was filed on September 10, 1929, and on the same date appellant filed its first amended answer, specifically denying all allegations of negligence, and further alleging that deceased's death was caused or contributed to by his own negligence, alleging fully and specifically all of the defensive grounds in this respect, submitted in the court's charge. The thirteenth paragraph of appellee's answer is as follows:

"For special answer defendant says that the deceased saw, or ought to have seen, its train approaching said crossing; that notwithstanding which, the deceased engaged in an effort to beat the train to the crossing before defendant's train reached same, and engaged in a race for that purpose, but that defendant's employees did not at the time know that such was the purpose of deceased, and did not engage in a race with him, and as soon as those in charge of the engine discovered the peril of the deceased they used all means at hand, consistent with the safety of the train, and the persons upon same, to stop the train before reaching the crossing, and by ringing of the bell and blowing the whistle to deter and prevent deceased from attempting to drive over said crossing in front of said approaching train. That in undertaking to go over said crossing with the train approaching it, deceased failed to use ordinary care and prudence for his safety, and voluntarily assumed the danger and hazard of doing; that his act in so doing was contributory negligence, and proximately caused, or contributed in causing the collision, and his death."

The five adult children, the married daughters being joined by their husbands, filed a plea of intervention, thereby making themselves parties, but in such plea disclaimed "any and all interest of every kind and character in and to the subject matter of this suit." This intervention and disclaimer was filed in view of an exception presented by defendant, because of the failure of necessary parties to join in the suit. All of the adult children by reason of this plea in intervention became parties to the suit and are bound by this judgment.

On September 16, 1929, the day the case went to trial, appellee filed a pleading indorsed as a "first supplemental answer," which consisted of a special exception to paragraph 9 of appellant's answer, a general denial of all facts alleged in said manner, and the following plea in reply to that portion of the amended answer above quoted:

"Specially answering that portion of said amended answer wherein defendant admits that 'those in charge of the engine discovered the peril of the deceased,' this plaintiff alleges that after such 'discovery' was made, 'those in charge of the engine' 'negligently failed to use' all of the means at hand consistent with the safety of the train, and the persons upon same, to either stop or diminish the speed of said train or to give warning and thereby avoid the threatened injury and death of deceased and that such negligence was the proximate cause of such injury and death."

By this pleading appellee, for the first time, presents discovered peril as a ground for recovery. Appellant at once objected to the allegation pleading the ground of discovered peril, for the reason that it was an affirmative ground for recovery and could not be pleaded only in a supplemental petition, and prayed

the court that the allegation be stricken from the pleading. The court overruled this prayer, on the ground, as stated in the order, that such allegation was in answer to an affirmative plea of defense contained in appellant's answer, and as such was properly set up in a supplemental petition. The court reserved the question as to whether the allegation should also be considered as an affirmative ground for recovery until all of the evidence was completed. At the conclusion of the evidence, over appellant's timely and proper objection, the court submitted the issue of discovered peril. Both rulings of the court in respect to this matter are made the basis of proper assignments of error.

The case was submitted to the jury on special issues, a verdict returned by the jury in favor of appellee on all of the issues, and judgment duly entered in accordance with the verdict. These special issues embrace the three grounds of negligence alleged by appellee in her first amended original petition, and the ground of discovered peril alleged only in her first supplemental petition. The defensive issues submitted embrace practically all of the grounds of defense alleged by appellant, including alleged acts of contributory negligence of both the deceased McDuff Larkin and deceased Dock Boyett. There was an issue submitted in reference to whether the deceased parties were using the automobile in a joint enterprise, and this was answered in the negative. All of the findings of the jury, except those in respect to the acts of deceased Boyett, we have concluded, are sustained by the evidence, and we adopt same as the findings of this court. The findings in reference to the acts of negligence of deceased Boyett are rendered immaterial to a decision of this cause by reason of the finding of the jury, to the effect, that the deceased parties were not on a joint enterprise at the time of the collision. We do not express any opinion as to whether the findings of the jury in this respect are sustained by the evidence. The relevant findings, paraphrased and numbered as the issues are numbered in the court's charge, are as follows:

(1) Appellant did permit an embankment on its right of way, which obstructed the view of those operating its trains and those approaching the crossing of the highway where deceased was killed; (2) appellant was negligent in permitting said embankment to so obstruct the view of those operating its trains and those approaching the crossing on the highway; (3) such negligence was a proximate cause of the death of deceased; (4) the crossing on the highway where deceased was killed was at such time more than ordinarily hazardous and dangerous to travelers on the highway using the crossing and exercising ordinary care; (5) appellant was negligent in failing to keep some person, or to maintain at or near the crossing some device, other than a signboard, for the purpose of warning persons approaching the crossing of the approach of defendant's trains; (6) such negligence was a proximate cause of the death of deceased; (7) appellant's agents or servants operating the train which struck and killed deceased approached the crossing at a dangerous rate of speed; (8) appellant, or its agents or servants, operating the train which struck and killed deceased, was negligent in approaching said crossing at a dangerous rate of speed at the time deceased was struck and killed; (9) such negligence was a proximate cause of the death of deceased; Nos. 10, 11, and 12 submit the issue of "discovered peril" and the findings on such issue are in favor of appellee; (13) deceased Larkin was not negligent in failing to look for an approaching train on approaching the crossing; (13a) deceased Boyett was not negligent in failing to look for an approaching train on approaching the crossing; (15) deceased Larkin was not negligent in failing to listen for an approaching train on approaching the crossing; (15a) deceased Boyett was not negligent in failing to listen for an approaching train on approaching the crossing; (17) deceased Larkin was not negligent in failing to stop the automobile in which he was riding before reaching the crossing; (17b) deceased Boyett was not negligent in failing to stop the automobile in which he and deceased Larkin were riding before reaching the crossing; (18) deceased Larkin was not negligent in failing to cause the driver of the automobile in which he was riding to stop same before going on the crossing; (19) the automobile in which deceased Larkin was riding was not being driven at an excessive rate of speed in approaching the crossing; (22) deceased Larkin, when within a sufficient distance from the track that he could have stopped, or caused the automobile to be stopped because reaching the track, by the exercise of ordinary care for his own safety, could not have seen or heard the approaching train by looking or listening for same; (25) the sum of $15,000, if paid now in cash, will fairly and reasonably compensate appellee for the damages which the evidence shows she has sustained as the direct and proximate result of the death of her husband, McDuff Larkin. The court gave appellant's requested instruction relating to the burden of proof on all issues submitting any ground of recovery in favor of appellee.

The following special issues were requested by appellant, without waiving its claim for peremptory instruction in its favor, and given by the court:

"No. 27: The conditions which rendered the said crossing more than ordinarily dangerous were either known to defendant, or, in the exercise of ordinary care, should have been known.

"No. 28: At the time of the collision and death of deceased Larkin he and Boyett were not engaged in a joint enterprise or undertaking.

"No. 29: The death of deceased Larkin was not the result of an 'unavoidable accident.'"

In connection with this last-requested issue, there was given a correct definition of the term "unavoidable accident." The court, in its charge, correctly defined the terms "negligence," "contributory negligence," "ordinary care," and "proximate cause."

When the jury reported to the court that a verdict had been reached and after the judge had examined the verdict, he declined to receive it and sent the jury back for further consideration, with the following written instruction: "You are instructed that your answer to special issue No. 29 and to findings with reference to the question of negligence, conflict, for this reason, the court cannot receive your verdict as submitted. You will therefore retire and further consider your verdict." Special issue No. 29 is appellant's requested issue, submitting the question of "unavoidable accident." The finding of the jury on this issue, when the verdict was first returned, was that the death of deceased was the result of an "unavoidable accident."

■ Under the instruction of the court, the jury returned to its room, and, after further consideration, returned a verdict with a negative answer to special issue No. 29. We do not think there was error in the court's action in this respect. The charge in no way suggested to the jury what, if any, change should be made in any of the answers. If the findings had remained as first returned, there would have been a clear conflict in the jury's findings on the issues of negligence and the finding on the issue of "unavoidable accident"; for, if appellant was guilty of negligence that was a proximate cause of deceased's death, then the accident was avoidable. We believe, under the circumstances, it was the court's duty to retire the jury, with the instruction given, for a further consideration of the case, before such verdict was accepted and a mistrial, because of conflict, pronounced.

As heretofore stated, on the same day appellee filed her amended petition, appellant filed its first amended answer, in which, for the first time, there occurred its admission that its engineer saw the automobile in which deceased was riding approximately 100 feet from the crossing. In connection with such admission it alleges that at this time the engineer assumed that the automobile, traveling 8 or 10 miles per hour, would be brought to a stop before it reached the crossing, it being approximately 40 feet from the crossing; and it is further alleged in this connection that it was not until the train had approached to within 60 feet of the crossing, that the engineer realized that the automobile would likely attempt to cross the track in front of the train, and that at such time the engineer could not have avoided the collision with the automobile, by use of all the means he had at hand. With the pleadings in such status as to the cause of action and the grounds of defense, six days after these amended pleadings were filed and on the day the trial opened appellee filed the said supplemental petition. Such supplemental petition denies the allegations of appellant's answer, that the train could not have been stopped or the collision avoided, at the time appellant's engineer realized the perilous position of the men in the automobile, by the use of all available means, and then pleads, as an affirmative ground for recovery, "discovered peril." Appellant at once filed a first supplemental answer, in which a special exception was directed to the allegation in the supplemental petition, pleading discovered peril, and praying for a recovery by reason thereof. The court overruled this exception on the ground that, as a reply pleading, it was a proper answer to the pleading of appellant, and reserved his ruling as to the legal effect of the said allegation on appellee's right to recover on this ground. The issue of discovered peril was submitted to the jury as a special issue, found in favor of appellee, and in part this finding is made a basis for the judgment. Was this error?

■■ It is well settled in this state that the petition on which a plaintiff goes to trial must contain all of the affirmative grounds on which a recovery is sought, and that any omission or error in this respect cannot be supplied by a supplemental petition. The office of a supplemental petition is merely to reply to affirmative allegations of defense contained in a defendant's answer. Article 2003, R. C. S. 1925; District Court Rules 10–12; Crescent Insurance Co. v. W. R. Camp, 64 Tex. 521; Glenn v. Dallas County, etc., Levee District, 114 Tex. 325, 268 S. W. 452; Burger v. Ray (Tex. Civ. App.) 239 S. W. 257; Schaff v. Perdue (Tex. Civ. App.) 254 S. W. 151; Creosoted Wood Block Paving Co. v. McKay (Tex. Civ. App.) 234 S. W. 587; Thompson v. Caldwell et al. (Tex. Civ. App.) 22 S.W.(2d) 720; May v. Anthony (Tex. Civ. App.) 151 S. W. 602; Fink v. San Augustine Grocery Co. (Tex. Civ. App.) 167 S. W. 35; Townes Texas Pleading (2d Ed.) pp. 444, 447, and 463.

■ There is in our jurisprudence a pleading known as "a trial amendment," and it likewise has a specific function. If, on the occasion a case goes to trial, a special exception be sustained to one or more allegations of plaintiff's cause of action, it is permissible for the court to allow the plaintiff to replead only the allegation, stricken out on exception, without the necessity of amending the entire

petition, and the pleading thus supplying the excluded allegation is termed a trial amendment; likewise, if an allegation of a petition in respect to a ground of recovery has not been excepted to, but the court, during the progress of the trial, holds such allegation insufficient for the admission of plaintiff's evidence to establish the facts attempted to be alleged, a plaintiff may, on leave of the court, file a trial amendment, curing the defect. Such trial amendment is a part of the petition on which recovery is sought, and the two are considered as one pleading. If, however, there should be a continuance, or a mistrial, or a new trial granted after judgment, the defects of the petition must be cured by amendment before another trial is had. A defendant, however, can waive the fact that a ground of recovery is presented only by supplemental petition by failing to object to the manner in which a plaintiff has pleaded a cause of action, but there is no such waiver in this case. Glenn v. Dallas County, etc., Levee District, supra, and cases therein cited.

It is true that, though a pleading be styled a supplemental pleading, if its real function is that of a trial amendment, a court will so consider it, notwithstanding the name given it by the pleader. In the instant case, no exception had been sustained to any plea of discovered peril and no evidence had been offered under a claim that the issue of discovered peril was defectively pleaded in the amended petition, and that a trial amendment was necessary in order to admit evidence on such issue, and no cause had arisen giving the right to file a trial amendment. It answers affirmative pleadings filed six days before the trial began, and performs the function only of a supplemental petition. If appellee desired to avail herself of the doctrine of discovered peril, after appellant made the said admission in its answer, she could only do so by amending her petition so as to include therein such new ground of recovery. The court erred in submitting to the jury the issue of discovered peril, because there was no proper pleading to authorize such issue.

We are of opinion, however, that the evidence raises the issue of discovered peril, notwithstanding the statement of the engineer as to the time and place of his train when he first realized the perilous position of the occupants of the automobile. The jury was not bound by this statement, as there was evidence tending to show that the engineer may have actually realized the perilous position of the occupants of the automobile when he first discovered the approaching vehicle, and only used the warning whistle. Under his own evidence, if he had then attempted the emergency stop he did later, the automobile might have crossed in safety. T. & P. Ry. Co. v. King (Tex. Civ. App.) 18 S.W.(2d) 757; T. & N. O. Ry. Co. v. Hart (Tex. Civ. App.) 294 S. W. 978.

The judgment, however, does not rest alone on the findings of the jury on the issue of discovered peril. The negligence of appellant as a proximate cause of the death of deceased Larkin is properly alleged and well pleaded on three other separate and distinct grounds. Each of these grounds of recovery was submitted to the jury and findings favorable to appellee made on each of such issues. If any one of these be sustained by evidence, there is sufficient warrant for the judgment rendered. The submission of the issue of discovered peril cannot be considered as prejudicing the rights of appellant in respect to the submission of these other grounds of recovery. T. & N. O. Ry. Co. v. Hart, supra.

On the occasion in question, it was the duty of appellant, and its employees operating the train over this crossing, to exercise ordinary care for the safety of persons traveling the highway and necessarily using the railroad crossing; it was likewise the duty of such persons, traveling over this railroad crossing, to exercise ordinary care for their own safety, and such duty rested on deceased at the time under inquiry. The law presumes that appellant and its trainmen, on this occasion, did exercise the care imposed by law; there is likewise the presumption that the deceased also exercised the care for his own safety the law imposed upon him. Hence the rule of law that the burden of proof rested on appellee to show, by a preponderance of the evidence, that this duty was not performed by appellant, and that the death of deceased proximately resulted from appellant's failure in this respect, and the rule of law that the burden rested upon appellant to show, by a preponderance of the evidence, that, notwithstanding its failure to perform its duty, the death of deceased was proximately contributed to by his own failure in respect to the duty imposed on him.

The finding of the jury is that appellant was guilty of negligence in permitting an embankment on its right of way obstructing the view of the highway of those operating trains over the crossing, and the view of such trains by those approaching the crossing on the highway. The finding of the jury also is that the crossing in question was more than ordinarily hazardous and dangerous to travelers on the highway, and that appellant was negligent in failing to use some method or device other than the usual signboard to warn persons on the highway of the approach of a train. A further finding of the jury is that the engineer was guilty of negligence in operating the train at a dangerous rate of speed over this crossing. These findings of fact, in respect to the existence of negligence on the part of appellant, are all supported by evidence, and are binding on this court, and must be considered as established facts in this case.

The findings of the jury also established the fact that each of such negligent acts of appellant was a proximate cause of the death of deceased, and established the further fact that, at the time of the collision in which deceased lost his life, deceased was observing ordinary care for his own safety. If these findings are supported by substantial evidence, then appellant is legally liable to appellee for the resulting damages.

■■■ If we exclude the matter of any negligent act of deceased Larkin proximately contributing to his death, then there can be no question but that each of the three acts of negligence was a proximate cause of his death. Hence the issue narrows itself to the single question as to whether the evidence, as a matter of law, establishes the fact that deceased was guilty of negligence which proximately contributed to his death.

Both occupants of the automobile were killed. The only persons who witnessed the collision were the engineer of the train and a truck driver who had stopped his truck on the highway some distance on the opposite side of the crossing. The engineer's testimony is to the effect that, when he first saw the occupants of the car, they were sitting in the front seat of the automobile and apparently not excited. This appears to have been the only sight he had of the occupants. This was at a time when he claims to have first realized that the automobile would attempt to cross in front of the train, and that he at once turned his attention to make an emergency stop of the train, turning away from sight of the car, when he had performed this duty. The other witness, the truck driver, testified, in effect, that he saw the automobile approaching the crossing, and that it was traveling slowly and apparently coming to a stop before reaching the crossing, but suddenly, just before reaching the crossing, the car speeded up and was upon the crossing when it was struck by the train; that during his observance, the party not driving the car (Larkin) was leaning toward the driver, apparently talking in a very earnest manner. It was down grade to the crossing, both on the highway and on the railroad, and the engine was not working steam, but the train was coasting and making as little noise as possible for such train to make. The wind was blowing a gale from the north, and there were trees immediately in the vicinity whose branches made considerable noise from their swaying in the heavy wind, and the automobile had just emerged from a deep cut. The tendency of such conditions was to prevent deceased from hearing the sound made by the ringing bell on the locomotive, the blast of the engine whistle for the station at the switch, or for the crossing, and the noise made by the coasting train.

Under the circumstances, there is made an issue of fact as to whether deceased or the driver of the automobile heard the crossing whistle, the noise made by the approaching train, the ringing of the bell, or could have stopped the automobile after the train became visible. It is true that witnesses at a greater distance testified to hearing these signals, but, as we understand this record, all of these witnesses were on the south side of the railroad, and were aided, rather than hindered, in their hearing, by the direction of the wind. The driver of the truck did not hear the bell ringing, according to his recollection, but could see its movements, and therefore knew it was ringing. When the warning blast from the engine was given near the crossing, which sound reasonably appears should have been heard by the deceased and the driver of the car, it is not shown by any evidence that at this time the automobile could have been stopped before it reached the crossing. It does not appear what was the subject-matter of the apparently earnest words deceased was addressing to the driver just as the automobile speeded up and rushed onto the crossing. Under this state of the evidence, whatever inference that may be drawn from the fact of the speeding up of the automobile and the fact of the earnest manner of the conversation of deceased directed to the driver of the automobile at the time of this speeding up, and just preceding the collision, must be consistent with the presumption of law that both of these parties were at this time observing ordinary care for their own safety. With this in mind, the presumption will be indulged that, at the time the car speeded up, the driver knew the approach of the train and believed that his only chance to avoid a collision was to speed up the car and cross ahead of the train; that, on the contrary, deceased did not so believe, and was protesting against such act. No other inference is consistent with the presumption of law that the parties were observing at such time ordinary care for their own safety. Previous to this speeding up of the car, there is no evidence that tends to show that either the driver of the car or deceased Larkin knew that a train was moving toward the crossing. There is evidence warranting the jury to find that they could not have seen the train by looking until they had approached near to the crossing. Under all conditions surrounding this apparently very dangerous crossing, we are of the opinion that the evidence does raise an issue as to whether appellee was observing ordinary care for his own safety on the occasion in question, and that, as a matter of law, it cannot be said that any negligence of his proximately contributed to his death.

We therefore hold that the court did not err in overruling the request for peremptory instruction and in submitting the said special issues to the jury. M., K. & T. Ry. Co. v.

Merchant (Tex. Com. App.) 231 S. W. 327; Trochta et al. v. M., K. & T. Ry. Co. (Tex. Com. App.) 218 S. W. 1038, especially the addendum by Chief Justice Phillips; Emberlin et al. v. Wichita Falls, R. & Ft. W. Ry. Co. et al. (Tex. Com. App.) 267 S. W. 463; T. & P. Ry. Co. v. Ray (Tex. Civ. App.) 287 S. W. 91, 93; Hines v. Arrant (Tex. Civ. App.) 225 S. W. 767; Barron v. Houston, E. & W. T. Ry. Co. (Tex. Com. App.) 249 S. W. 825.

■ It is insisted, under proper assignments of error, that in any event, the judgment in this case is excessive. The evidence warrants the conclusion of facts that, at the time of his death, deceased was 68 years of age and had an expectancy of between nine and ten years; that he had served as a rural mail carrier for a number of years but had reached the age of retirement previous to his death, and had been so retired on a pension of $52.10 per month; that at the time of his death he was in robust health for a man of his years; that he owned a small farm, which was so managed by him that it brought an income of about $1,300 per year; that appellee, his wife, was 59 years old and also in good health. While the judgment of $15,000 is very high, we do not believe we can say that it is not sustained by the evidence, and hence overrule such assignment of error.

We have carefully examined all other assignments of error, with the result that we do not believe they show reversible error, and they are overruled. It necessarily follows, in our opinion, that this case should be affirmed, and it is so ordered.

Affirmed.

LOONEY, J. (dissenting).

I concur in the disposition of the case, and assent to all grounds upon which the decision is based, but dissent from the view of the majority in holding that the pleadings did not authorize the submission of the issue of "discovered peril."

It is true appellee did not, in her original petition, plead discovered peril as a ground for recovery, but this issue was later injected by appellant in paragraph 13 of its amended answer; the evidence raised the issue and fully sustained findings favorable to appellee.

My opinion is that the omission of appellee to plead the issue was supplied in appellant's answer, which, after admitting that the perilous position of deceased was discovered by its employees prior to the collision, sought, by appropriate allegations, to avoid liability by reason of that fact. The rule applicable to this situation was stated by the Supreme Court in the case of Hill v. George, 5 Tex. 89, as follows: "The rule is as stated by Gould in his Treatise upon Pleading (Chap. 3, sec. 192:) 'If one party expressly avers or confesses a material fact omitted on the other

side, the omission is cured. It may thus be made to appear, from the pleadings on both sides, that the plaintiff is entitled to the judgment, although his own pleading, taken by itself, is insufficient.' Hence it may be seen, that although the plaintiff committed the first fault, the defendant has remedied it, and cannot now complain."

This doctrine has been followed by an unbroken line of decisions. See Grimes v. Hagood, 19 Tex. 246, 250; Thomas v. Bonnie Bros., 66 Tex. 637, 2 S. W. 724; Lyon v. Logan, 68 Tex. 524, 5 S. W. 72, 2 Am. St. Rep. 511; Day Co. v. the State, 68 Tex. 526, 538, 4 S.W. 865; G. C. & S. F. Ry. Co. v. Anderson, 76 Tex. 244, 252, 13 S. W. 196; Gaston v. Wright, 83 Tex. 286, 18 S. W. 576; Maryland Casualty Co. v. Hudgins, 97 Tex. 128, 76 S. W. 745, 64 L. R. A. 349, 104 Am. St. Rep. 857, 1 Ann. Cas. 252; Willis v. Lockett (Tex. Civ. App.) 26 S. W. 419, 420; Security, etc., Co. v. Caruthers, 11 Tex. Civ. App. 430, 32 S. W. 837, 841; Red River, etc. Co. v. De Berry, 47 Tex. Civ. App. 96, 105 S. W. 998, 1000.

I am also of opinion that appellee had the right, in reply to the matter set up in appellant's answer, to plead in the supplemental petition facts presenting the issue of discovered peril as a part of her cause of action.

As before shown, appellant introduced the subject of discovered peril by admitting that those in charge of its engine discovered the perilous position of deceased, and, to avoid the consequences of such admission, alleged that its employees used all means at hands, consistent with safety, to stop the train before reaching the crossing, and by ringing the bell and blowing the whistle to deter deceased from attempting to drive over the crossing in front of the approaching train.

Replying to these allegations, appellee, in her supplemental petition, said: "Specially answering that portion of said amended answer wherein defendant admits that those in charge of the engine discovered the peril of the deceased, this plaintiff alleges that after such discovery was made those in charge of the engine negligently failed to use all of the means at hand, consistent with the safety of the train and persons upon the same, to either stop or diminish the speed of said train, or to give warning and thereby avoid the threatened injury and death of deceased, and that such negligence was the proximate cause of such injury and death."

The statutes on pleading contain no reference to the filing of supplemental petitions or answers (see chapter 2, title 42, R. S. 1925 [articles 1997–2020]); this subject is regulated exclusively by rules of procedure established by the Supreme Court under authority of section 25, art. 5, of the Constitution. Rule 3, for district and county courts, in so far as is applicable, reads: "The petition of plaintiff shall consist of an original petition,

and such supplemental petitions as may be necessary in the course of pleading by the parties to the suit to enable the plaintiff to state all of the facts presenting his cause of action, and such other facts as may be required to rebut the facts that may be set up in the original and supplemental answers, as pleaded by the defendant."

It is obvious that the phrase "petition of plaintiff" is used in a plural sense, and comprehends not only the original petition, but' such supplemental petitions as may be necessary to enable the plaintiff to state all facts constituting his cause of action; and furthermore to state such other facts as may be necessary to rebut the facts pleaded by the defendant. The latter purpose is also provided for in rule 5, as follows: "The plaintiff's supplemental petitions may contain exceptions, general denials and the allegations of new facts not before alleged by him, in reply to those which have been alleged by the defendant."

In view of this plain procedure, I think appellee had the right to set up in the supplemental petition, as a part of her cause of action, the issue of discovered peril. This view is supported by the following decisions: Standifer v. Bond Hdwe. Co. (Tex. Civ. App.) 94 S. W. 144; City of San Antonio v. Wildenstein, 49 Tex. Civ. App. 514, 109 S. W. 231, 232; Cotulla v. Urbahn (Tex. Civ. App.) 126 S. W. 13.

Furthermore, if it be conceded that the court erred in refusing to sustain appellant's exception, objecting to the issue of discovered peril being alleged in the supplemental petitions, nevertheless, as the pleading remained in the case, evidence was introduced thereunder, the issue was submitted to the jury and found, with abundant evidence to sustain the finding, in favor of appellee. In this situation, appellant was not and could not have been harmed by said action and ruling of the court. Reversals will not be ordered unless the error complained of was harmful and injurious. Texas Jurisprudence, vol. 3 p. 424 § 302, and authorities cited.

For these reasons, I dissent from the holding of the majority in the respect above mentioned.

On Motion for Rehearing.

JONES, C. J.

In its motion for rehearing, appellant insists that this court was in error in holding that the embankment on its right of way, which obstructed deceased's view of the approaching train, and also obstructed the view of appellant's engineer of an automobile approaching the crossing, could be made an independent ground of actionable negligence against appellant, and to sustain this contention, cites M., K. & T. Ry. Co. of Texas v. Rogers, 91 Tex. 52, 40 S. W. 956; I. & G. N. Ry. Co. v. Knight, 91 Tex. 660, 45 S. W. 556, 557; and G., H. & S. A. Ry. Co. v. McCrorey (Tex. Com. App.) 23 S.W.(2d) 691.

It is not believed that the opinion in the instant case on this question is in conflict with the cases relied upon by appellant. In the Knight Case, supra, the rule in reference to obstructions permitted on the right of way is stated as follows: "In the case of Railway Co. v. Rogers * * * we held that it is not negligence for a railroad to put on its right of way obstructions to the view of one approaching a crossing, whether the obstructions be placed there by the railroad for its own use, or by another, by the railroad's permission, to be used in connection with the business of the road. * * * It is obvious in the present case that the obstructions which were placed near the track of the defendant company were the ordinary structures used by the company in receiving and discharging its freight. When near a crossing, such structures necessarily obstruct the view of those using the highway, in passing over the track. From the very nature of the case, at every depot of a railway company the view of approaching trains must in some measure be shut off by the buildings which are requisite to the transaction of its business; and hence the erection and maintenance of such buildings cannot, on account of their obstructing the view of the track, be deemed negligence either in law or in fact."

In the McCrorey Case, supra, the obstruction under discussion was that produced by necessary excavation in constructing the railway track. Under the cited authorities, the rule is restricted, as shown in the Knight Case, to obstructions placed by the railroad for its own use, or by another with the railroad's permission "to be used in connection with the business of the road." The rule may be thus stated: Obstructions placed by a railroad on its right of way that are necessary, either for the transaction of the business of the railroad or for its operation, and obstructions placed on the right of way by others, with permission of the railroad, to be used in connection with the business of the railroad, cannot be made an independent ground of negligence, though such obstructions may obscure the view of trains to those crossing the railroad in the immediate vicinity of the obstruction. The instant case is not within this rule, for the offending embankment was not used for the transaction of any business of the railroad, or in connection with the operation of its trains, and could not be used for either purpose; nor was it made by any excavation in the construction of the railroad. The inference is clear from this record, that it was placed on the railroad's right of way when the highway was graded, and could easily have been removed without damage to the highway. We

therefore hold that the trial court did not err in submitting as a ground of negligence the fact that this obstruction existed.

We have carefully examined all other questions insisted upon as grounds for rehearing, with the result that the motion for rehearing is overruled.

Appellee's motion for rehearing is likewise overruled. From this latter holding, Mr. Justice LOONEY dissents.