NO. 07-08-0231-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 28, 2008

______________________________


IN RE WILSON E. BROWN, RELATOR

_______________________________

Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â By this original proceeding, Relator, Wilson E. Brown, an inmate proceeding in
forma pauperis, seeks a writ of mandamus to compel the Honorable Shane Hadaway,
Judge of the 39th Judicial District Court, to set aside his conviction for aggravated sexual
assault of a child, which he alleges is a void conviction. We deny Relatorâs request.
Â Â Â Â Â Â Â Â Â Â This Courtâs mandamus jurisdiction is limited. We have authority to issue a writ of
mandamus, agreeable to the principles of law regulating those writs, against a judge of a
district or county court in our district. See Tex. Govât Code Ann. Â§ 22.221(b)(1) (Vernon
2004). 
Â 
Background
Â Â Â Â Â Â Â Â Â Â In 1989, Relator was indicted in cause number 729 for intentionally and knowingly
causing the anus of a child younger than fourteen years of age and not his spouse âto
contactâ his sexual organ, and in cause number 730 for intentionally and knowingly causing
the sexual organ of a child younger than fourteen years of age and not his spouse âto
contact and penetrateâ his sexual organ. According to the documents provided by Relator,
he entered into a plea bargain in cause number 729 for thirty years confinement and
waived his right to appeal.
Â Â Â Â Â Â Â Â Â Â The certified copies of the indictments provided by Relator reflect that, when tri-folded for envelope style filing, the blanks provided for entry of the cause numbers on the
back side of the respective indictments have 729 and 730 lined through and interchanged. 
In other words, cause number 729 is crossed out and replaced with cause number 730 and
vice versa.


 Due to this interlineation, Relator complains that he was not lawfully convicted
for the offense to which he pleaded guilty in cause number 729 as originally completed
when returned by the Kent County Grand Jury on March 6, 1989. According to Relatorâs
documents, he sought relief from the Court of Criminal Appeals in 1991 by writ of habeas
corpus, which was denied in 1992. 
Â Â Â Â Â Â Â Â Â Â In March 2008, Relator filed in the convicting court a âMotion for Trial Court to Enter
Nunc Pro Tunc Order Setting Aside Void Conviction.â He alleges that his conviction in
cause number 729 is void and that he is entitled to relief by having his conviction in that
cause set aside. By letter ruling dated April 2, 2008, the trial court denied Relatorâs motion.
Standard of Review
Â Â Â Â Â Â Â Â Â Â âMandamus issues only to correct a clear abuse of discretion or the violation of a
duty imposed by law when there is no other adequate remedy by law.â Walker v. Packer,
827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding), quoting Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). To show entitlement to
mandamus relief, a relator must (1) show that he has no adequate remedy at law to
redress the alleged harm and (2) the act sought to be compelled is ministerial and does
not involve a discretionary or judicial decision. State ex rel. Young v. Sixth Judicial Dist.
Court of Appeals, 236 S.W.3d 207, 210 (Tex.Crim.App. 2007). An act is ministerial if the
relator has âa clear right to the relief soughtââit must be âclear and indisputableâ such that
its merits are âbeyond disputeâ with ânothing left to the exercise of discretion or judgment.â 
State ex rel. Rosenthal v. Poe, 98 S.W.3d 194, 198 (Tex.Crim.App. 2003), quoting Hill v.
Fifth Court of Appeals, 34 S.W.3d 924, 927-28 (Tex.Crim.App. 2001).
Â 
Â 

Analysis
I. No adequate remedy at law.
Â Â Â Â Â Â Â Â Â Â A party may not appeal a trial courtâs denial of a motion for judgment nunc pro tunc
because it does not arise from a final judgment. See Shadowbrook Apartments v. Abu-Ahmad, 783 S.W. 2d 210, 211 (Tex. 1990). Thus, Relator has demonstrated that he has
no adequate remedy at law by normal appeal. 
II. A ministerial act.
Â Â Â Â Â Â Â Â Â Â The trial court may correct clerical errors made in a judgment at any time by using
a judgment nunc pro tunc. State v. Bates, 889 S.W.2d 306, 309 (Tex.Crim.App. 1994). 
The trial court cannot, however, correct a judicial error made in rendering a final judgment. 
Id. Relator has not provided a copy of his judgment of conviction with the documents
provided in support of his Petition for Writ of Mandamus to determine whether it contains
a clerical error. See Tex. R. App. P. 52.3(j)(1)(A). 
Â Â Â Â Â Â Â Â Â Â An act is ministerial where the law clearly spells out the duty to be performed by an
official and does so with such certainty that nothing is left to the exercise of discretion or
judgment. Texas Dept. of Corrections v. Dalehite, 623 S.W.2d 420, 424 (Tex.Crim.App.
1981). Relator has not demonstrated that the trial court had no discretion but to grant his
motion. His complaint that his conviction should have been set aside by the trial court as
void is outside the scope of a judgment nunc pro tunc. He sought to have the trial court
correct a judicial error which may not be accomplished by judgment nunc pro tunc. The
record before us does not show that the trial court failed to perform a ministerial act.
Â Â Â Â Â Â Â Â Â Â Additionally, Relatorâs dissatisfaction with the trial courtâs denial of his motion is not
properly addressed in the context of a mandamus proceeding. See generally Polaris Inv.
Management Corp. v. Abascal, 892 S.W.2d 860, 861-62 (Tex. 1995). A particular ruling
on a motion is generally discretionary for which mandamus will not lie. We conclude that
Relator has not demonstrated his entitlement to mandamus relief.
Â Â Â Â Â Â Â Â Â Â Consequently, the request for mandamus relief is denied.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Â Â Â Â Â 




as written guidelines. In determining whether a business is sexually
oriented, "[w]e look for several things. We look at the - the particular things that they have
for sale or for rent, merchandise. The clientele, we look for clientele that's going into the
business. We look for - we also look in the area of have they - did they have a sexually
oriented business permit in the past. Things such as that." Smith said the police are
"looking for a good faith effort [of] what the business is actually . . . doing." He admitted
that the officers would make an "eyeball estimate" about what is being sold. Calculating
a store's revenue from sexually oriented material as opposed to other merchandise would
be very hard to do, but that it might be done in the case of a store that is a "close call." 
Smith had visited All Star "a couple of times" and, in his opinion, it was clearly a sexually
oriented business and "wouldn't be a close call."

 Chapter 243 of the Local Government Code empowers cities to regulate sexually
oriented businesses. In relevant part, it defines a sexually oriented business as:

 . . .a sex parlor, nude studio, modeling studio, love parlor, adult bookstore,
adult movie theater, adult video arcade, adult movie arcade, adult video
store, adult motel, or other commercial enterprise the primary business of
which is the offering of a service or the selling, renting, or exhibiting of
devices or any other items intended to provide sexual stimulation or sexual
gratification to the customer.


Tex. Local Gov't Code Ann. § 243.002 (Vernon 1999).


 In carrying out this authority, the city enacted its ordinance number 97-75. The
ordinance defines "manager," "sexually oriented enterprise," and "adult bookstore" as
follows:

 Manager. Any person who supervises, directs or manages any
employee of an enterprise or any other person who conducts any business
in an enterprise with respect to any activity conducted on the premises of the
enterprise, including any "on-site manager."


Houston City Ordinance No. 95-75 Â§ 28-251. 


 Enterprise. An adult bookstore, adult cabaret, adult encounter parlor,
adult lounge, adult modeling studio, adult movie theatre or any
establishment whose primary business is the offering of a service or the
selling, renting or exhibiting of devices or any other items intended to
provide sexual stimulation or sexual gratification to its customers, and which
is distinguished by or characterized by an emphasis on matter depicting,
describing or relating to specified sexual activities or specified anatomical
areas.


 Adult Bookstore. An establishment whose primary business is the
offering to customers of books, magazines, films, or videotapes (whether for
viewing off-premises or on-premises by use of motion picture machines or
other image-producing devices), periodicals, or other printed or pictorial
materials which are intended to provide sexual stimulation or sexual
gratification to such customers, and which are distinguished by or
characterized by an emphasis on matter depicting, describing or relating to
specified sexual activities, or specified anatomical areas.


Houston City Ordinance No. 97-75 Â§ 28-121.


 Adult arcade . . . any premises that is subject to regulation under Chapter
243 of the Local Government Code, as amended, to which members of the
public or members of any club, group or association are admitted and
permitted to use one or more arcade devices.


 Arcade device . . . any coin- or slug-operated or electronically or
mechanically controlled machine or device that dispenses or effectuates the
dispensing of entertainment, that is intended for the viewing of five (5) or
fewer persons in exchange for any payment of any consideration.


 Entertainment shall mean:


 1) Any live exhibition, display or performance; or


 2) Any still picture(s) or movie picture(s), whether mechanically, electrically
or electronically displayed; or


 3) Any combination of the foregoing, in which the specified anatomical areas
or specified sexual activities are depicted.


Houston City Ordinance No. 97-75 Â§ 28-81.


 In his first issue, appellant challenges the sufficiency of the evidence to sustain a
holding that All Star was an adult bookstore, and that appellant served as a manager. In
his second issue, appellant argues the evidence is insufficient to prove All Star was an
adult arcade or that appellant acted as an operator of an adult arcade. Because these
issues are so closely related, we will consider them together. The standards governing
our review of legal and factual sufficiency challenges are now so well established as to be
axiomatic and it is not necessary to reiterate them here. See Jackson v. Virginia, 443 U.S.
307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and Clewis v. State, 922 S.W.2d 126
(Tex.Crim.App. 1996). Suffice it to say that we must first determine whether the evidence
is legally sufficient and, if it is not, render a judgment of acquittal. Id. at 133. If the
evidence is legally sufficient, we must then determine if it is factually sufficient when
measured by the standard explicated in Clewis. Id. 

 The evidence which we have set out in some detail is ample to sustain the trial
judge's finding that All Star is both an adult bookstore and an adult arcade. The question
then presented is whether the evidence is sufficient to sustain a finding that appellant was
acting as a manager/operator of All Star within the purview of the ordinance. The evidence
is undisputed that at the time in question here, appellant was the only employee present
and was operating the cash register and the electronic control admitting patrons to the
arcade.

 The very recent decision of the 14th Court of Appeals in Pedraza v. State, 34 S.W.2d
697 (Tex.App.-Houston [14th Dist.] 2000, no pet.) is instructive in interpreting the
ordinance. In that case, the court was also presented with the question of whether the
evidence was sufficient to sustain a finding that the appellant was an "operator" of an adult
arcade. The court of appeals noted the trial evidence concerning Pedraza was 1) he was
the only person working behind the counter, and 2) he was "in charge" of the arcade while
[the police officer] was there. Id. at 700.

 En route to reversing the conviction, the appellate court viewed the ordinance as
a whole and, in particular, the detailed requirements the "operator" must comply with in
order to obtain a permit. Id. at 699. After doing so, it commented that it was clear that in
the ordinance, the city intended an operator to mean more than a clerk or an employee
who simply minds the store, and concluded that the trial evidence was legally insufficient
to show that Pedraza possessed "managerial control" such that he was an operator as that
term is defined in the ordinance and was really nothing "more than a mere clerk." Id. at
700. 

 Here, the evidence was very similar to that before the Pedraza court. As was the
case in Pedraza, we can conclude that appellant was only a clerk who minded the store
and whose responsibilities were not sufficient make him a "manager" as the term is defined
in the ordinance. (1) Appellant's first two issues must be, and are, sustained. That action
nullifies the necessity for a discussion of appellant's remaining two issues.

 Accordingly, the judgments of the trial court are reversed, and judgment rendered
acquitting appellant of the offenses of which he was convicted. Tex. R. App. P. 43.2(c).


 John T. Boyd

 Chief Justice


Do not publish.
1. As did the Pedraza court, we note that the ordinance does place a duty on
employees and agents of the arcade to keep the view unobstructed. However, the State
did not charge appellant as an employee or agent and that question is not before us.